No. 11-3257

_____

**In the**
**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

_____

**VAHAN H. GUREGHIAN, DANIELLE GUREGHIAN, and CHARTER SCHOOL MANAGEMENT, INC.,**

*Appellants,*

v.

**PHILADELPHIA NEWSPAPERS, LLC, *et al.*,**

*Appellee.*

_____

On Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania dated July 19, 2011, and docketed July 20, 2011, in Civil Action Number 10-7098

_____

**BRIEF OF APPELLANTS**

_____

Edmond M. George, Esquire
D. Alexander Barnes, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
Telephone: (215) 665-3100
Facsimile: (215) 665-3165

Dated: January 9, 2012        *Counsel for Appellants*

4606833

## <u>TABLE OF CONTENTS</u>

<u>**PAGES**</u>

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
      JURISDICTION ..............................................................................1

II.   STATEMENT OF THE ISSUES ..................................................1

III.  STATEMENT OF THE CASE ......................................................2

IV.   STATEMENT OF THE FACTS ....................................................3

      A.   The State Court Litigation..................................................3

      B.   The Inquirer Bankruptcy Cases.........................................4

            1.   The setting of the bar date for filing administrative claims........5

            2.   The filing of Appellants Administrative Expense Requests.......6

            3.   The Debtors' Objection to the Administrative Expense
                 Requests ......................................................................8

V.    STATEMENT OF RELATED CASES AND PROCEEDINGS ..................11

VI.   STATEMENT OF THE STANDARD OF REVIEW ...................................11

VII.  SUMMARY OF THE ARGUMENT ............................................13

VIII. ARGUMENT..................................................................................14

      A.   The District Court Erred in Sustaining the Finding of the Bankruptcy
           Court that the Appellants Failed to Meet their Burden for the
           Allowance of Administrative Claims under 11 U.S.C. § 503.............14

            1.   The Statutory Elements under the Bankruptcy Code for an
                 allowable administrative expense claim ...................................15

                 a.   The Administrative Expense Request was "actual and
                      necessary to preserve the estate." ...................................15

b.    The Administrative Expense Request is a post-petition claim that arises from a "post-petition" transaction with the Debtors ....................................................................16

2.    The District Court Erred in Sustaining the Finding of the Bankruptcy Court that the Kinney Article did not constitute a Separate and Distinct Post-petition Act of Republication .....17

3.    The District Court Erred in Finding that the Kinney Article could not sustain a Claim of Defamation because it did not Specifically Identify Appellants ...............................................27

B.    The District Court Erred in Concluding that the Bankruptcy Court did not make Improper Premature Conclusions at the August 26, 2010, Hearing on the Debtors' Motion for Expedited Hearing ...............................................................................31

C.    The District Court Erred in Concluding that the Bankruptcy Court did not Infringe Appellants' Due Process Rights in Forcing Appellants to Participate in an Expedited Hearing on the Debtors' Objections to the Administrative Expense Requests with Insufficient Notice and Opportunity to be Heard .......................35

D.    The District Court Erred in Finding that the Appeal of the August 30 Order was Equitably Moot ...............................................40

IX.    CONCLUSION............................................................................................43

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

Agency Servs., Inc. v. Reiter, 513 F. Supp. 586, 587-88 (E.D. Pa. 1981) .............29

Anthony v. Interform Corp., 96 F.3d 692, 697 (3d Cir. 1996) ...............................40

Bay Harbor Mgmt. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros.
Holdings, Inc.), 415 B.R. 77, 80 (S.D.N.Y. 2009) ...................................................36

Boule v. Hutton, 138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001)..................................29

Brinich v. Jencka, 757 A.2d 388, 397 (Pa. Super. 2000).........................................29

Calpine Corp. v. O'Brien Environmental Energy Inc. (In re O'Brien
Environmental Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) .......................15

Churchill v. State of New Jersey, 876 A.2d 311, 319-20 (N.J. Super. 2005) ...19, 25

Davis v. Mitan (In re Davis), 347 B.R. 607, 612 (W.D. Ky. 2006) ......19, 25, 26, 27

Fanelle v. Lojack Corp., No. 99-4292, 2000 WL 1801270, at *2-3
(E.D. Pa. Dec. 7, 2000) ............................................................................................30

Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 16 (1st Cir. 2009) ..........33

Graham v. Today's Spirit, 503 Pa. 454, 457 (Pa. 1983) ..........................................18

In re American Classic Voyages, Co., 298 B.R. 222 (D. Del. 2003) ......................39

In re Centric Corp., 901 F.2d 1514, 1517 (10th Cir. 1990) ......................................38

In re Cohen and Sons Caterers, Inc., 143 B.R. 27, 28
(Bankr. E.D. Pa. 1992)........................................................................................15, 16

In re Continental Airlines, 91 F.3d 553, 560 (3d Cir. 1996) .............................40, 41

In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 397
(Bankr. E.D. Pa. 1987)..............................................................................................38

In re Li, 249 B.R. 388, 390 (E.D. Pa. 2000) ............................................................21

In re Met-L-Wood Corp., 115 B.R. 133, 135-36 (Bankr. N.D. Ill. 1990) ..............16

In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000) .................................41

In re Stanton L. Segal, 57 F.3d 342, 345 (3d Cir. 1998) .........................................13

In re Tobacco Road Associates, LP, No. 06-CV-2637, 2007 LEXIS 22990,
at *48 (E.D. Pa. March 30, 2007) ............................................................................39

In re UAL Corp., 297 B.R. 710, 720 (Bankr. N.D. Ill. 2003) .................................16

In re Women First Healthcare, Inc., 332 B.R. 115 (Bankr. D. Del. 2005)..............16

Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. 2008)....................28

Klayman v. Segal, 783 A.2d 607, 614 (D.C. 2001)..................................................29

Lagenkamp v. Hackler (In re Republic Trust & Sav. Co.), 897 F.2d 1041,
1043 (10th Cir. 1990)................................................................................................39

Manno v. Am. Gen. Finance Co., 439 F.Supp. 2d 418, 432 (E.D. Pa. 2006) .........18

Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978) ......................40

Mitan v. Davis, 243 F.Supp. 2d 719, 724 (W.D. Ky. 2003).............................25, 26

Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477-79 (E.D. Pa. 2010) .....................29

Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001) .......41

Pendergrass v. Choicepoint, Inc., 08-188, 2008 U.S. Dist.
LEXIS 99767, at *9 (E.D. Pa. Dec. 9, 2008)(collecting cases)...............................18

Salyer v. Southern Poverty Law Ctr., Inc., 701 F. Supp. 2d 912, 916-17
(W.D. Ky. 2009) ..................................................................................................26, 27

Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V. (In re
Lernout & Hauspie Speech Products, N.V.), 310 F.3d 118, 121
(3d Cir. 2002) ..................................................................................................13

Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.,
No. 02-cv-2258, 2007 WL 935703, at *6 (S.D. Cal., March 7, 2007) ........22, 23, 24

United States v. United States Gypsum Co., 333 U.S. 364, 395,
68 S.Ct. 525, 542, 92 L. Ed. 746 (1948) ....................................................12

Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981) .........11

## **STATUTES**

11 U.S.C. §§ 101, et seq. .....................................................................................1

11 U.S.C. § 503 .............................................................................1, 13, 14, 15

11 U.S.C. § 503(a) ...........................................................................................5

11 U.S.C. § 503(b) ......................................................................................5, 15

11 U.S.C. § 503(b)(1)(A) ................................................................................15

11 U.S.C. § 507(a)(1) ......................................................................................15

28 U.S.C. § 158(a) ...........................................................................................1

28 U.S.C. § 158(d) ...........................................................................................1

28 U.S.C. § 1334(b) .........................................................................................1

42 Pa.C.S. § 8343 ...........................................................................................28

42 Pa. C.S.A. §8341(b) ...................................................................................18

## **BANKRUPTCY RULES**

Fed. R. Bankr. P. 3003(c)(3) ..............................................................................5

Fed. R. Bankr. P. 8013 ....................................................................................12

Fed. R. Bankr. P. 9006 ....................................................................................38

Fed. R. Bankr. P. 9006(c) ............................................................................37, 38

L.B.R. 5070-1.................................................................................................37

L.B.R. 5070-1(f).............................................................................................38

## **<u>TREATISE</u>**

Restatement (Second) of Torts §577A....................................................................19

# I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Under 28 U.S.C. § 158(d), the courts of appeals have jurisdiction over appeals from "all final decisions, judgments, orders, and decrees entered" by a district court reviewing a bankruptcy court decision under 28 U.S.C. § 158(a). Pursuant to 28 U.S.C. § 1334(b), the district court has original, but not exclusive, jurisdiction of all proceedings arising under title 11 of the United States Code, or arising in and or related to cases under title 11.

# II.    STATEMENT OF THE ISSUES

A.    Whether the District Court erred in sustaining the finding of the Bankruptcy Court that the Appellants failed to meet their burden for the allowance of administrative claims under 11 U.S.C. § 503.

B.    Whether the District Court erred in concluding that the Bankruptcy Court did not make improper premature conclusions at the August 26, 2010, hearing on the Debtors' Motion for Expedited Hearing on the underlying merit of the Appellants' Administrative Expense Request before a complete record could be presented to the Bankruptcy Court and before the Appellants had the opportunity to file a response in opposition to the Debtors' Claim Objection.

C.    Whether the District Court erred in concluding that the Bankruptcy Court did not infringe the Appellants' due process rights in forcing the Appellants to participate in an expedited hearing on the Debtors' Objections to the

administrative Expense Requests with insufficient notice and opportunity to be heard.

D.    Whether the District Court erred in finding that the appeal of the August 30 Order was equitably moot on the grounds that the Debtors' Plan was substantially consummated without being stayed.

## III.    STATEMENT OF THE CASE

At all times material hereto, the bankruptcy cases of Philadelphia Newspapers, LLC, et al., the publisher of the Philadelphia Inquirer and the internet website "Philly.com", were pending before the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). On August 30, 2010, the Bankruptcy Court entered an Order denying the allowance of the administrative claim requests made by the Appellants in the bankruptcy cases arising from and related to a post-petition defamatory internet article, referencing previously printed materials, that falsely insinuated that Appellants are among those charter school operators who have misused public funds and have enriched themselves at the expense of children. The August 30, 2010 Bankruptcy Court Order was appealed to the United States District Court for the Eastern District of Pennsylvania (the "District Court"). On July 19, 2011 (entered on the docket on July 20, 2011), the District Court affirmed the August 30, 2010 Bankruptcy Court Order. This appeal follows.

## IV.   STATEMENT OF THE FACTS

### A.   The State Court Litigation.

Vahan Gureghian, Danielle Gureghian and Charter School Management,

Inc. (collectively, the "Appellants" or "CSMI Parties") are plaintiffs in a civil

action filed on or about January 6, 2009 against Philadelphia Media Holdings, LLC

("PMH"), The Philadelphia Inquirer (the "Inquirer"), Brian Tierney ("Tierney"),

Dan Hardy, Derrick Nunnally, Martha Woodall and Rose Ciotta in the Court of

Common Pleas of Delaware County, Pennsylvania and docketed as 09-0091 (the

"State Court Litigation"). (Limited Objection, Appx. Vol. II, pp. A105-06; BDE

#2246 at pp. 1-2) The State Court Litigation seeks damages and other relief arising

from a series of false and misleading newspaper and internet articles about Mr. and

Mrs. Gureghian and Charter School Management, Inc. (a charter school

management company owned by Mr. Gureghian) published by the Inquirer in

December 2008, highlighting their contract management of the Chester

Community Charter School ("CCCS") (the "Articles"). Id. Tierney is the chief

executive officer of PMH and is the chief executive officer and publisher of the

Inquirer.  Rose Ciotta is the Education Editor for the Inquirer who reviewed, edited

and authorized the Articles and Dan Hardy, Derrick Nunnally, and Martha

Woodall are staff writers for the Inquirer who investigated and authored the

Articles. Id. The Articles, as alleged by the Appellants, ignored the positive

achievements of CCCS and purposefully focused on inaccurate sources hostile to

charter schools in implying that CCCS's students were denied educational

resources when objective metrics clearly demonstrated otherwise. The State Court

Litigation alleges that PMH and Tierney were instrumental in orchestrating and/or

facilitating the publication of the false and misleading Articles and that this was

done in retaliation for failed business negotiations between Tierney and Mr.

Gureghian and/or to further Tierney's own personal business interests and that

Tierney himself wished to become, among other things, a charter school operator.

Id. The State Court Litigation further alleges that Tierney was aware of and knew

that the statements and contents of the Articles were false, misleading and

juxtaposed facts in a manner to make it appear as if Mr. Gureghian and CSMI were

conducting their operations in a manner similar to certain Philadelphia charter

schools with whom the Appellants have no involvement or association.  Id.

Additionally, the Articles disclosed Mr. and Mrs. Gureghian's home address and

provided a map to his residence. (Claim Objection - Exhibit C, Appx. Vol. II, pp.

A321-22; BDE #2466-3 at pp. 121-22)

## B.    The Inquirer Bankruptcy Cases.

On February 22, 2009 ("Petition Date"), the Appelllees, other than Debtor

Philadelphia Media Holdings LLC, filed voluntary petitions for relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"), commencing jointly-administered cases before the United States Bankruptcy Court for the Eastern District of Pennsylvania under main case number 09-11204 (the "Appellees" or "Debtors").[1] (Claim Objection, Appx. Vol. II, p. A137; BDE #2466 at p. 2)

### 1.    The setting of the bar date for filing administrative claims.

On or about June 11, 2010, the Debtors filed a Motion for Entry of an Order Pursuant to Section 503(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing a Deadline for Filing Administrative Claim Requests and Approving the Form and Manner of Notice Thereof (the "Administrative Expense Bar Date Motion"). (Administrative Expense Bar Date Motion, Appx. Vol. II, pp. A83-94; BDE #2175 at pp. 1-12)  The CSMI Parties filed a Limited Objection to the Administrative Expense Bar Date Motion ("Limited Objection"), expressly asserting that they had damage claims entitled to priority administrative status under 11 U.S.C. § 503(b) as a result of the Debtors' post-petition republishing of the defamatory Articles and objecting to the lack of procedures in the Administrative Expense Bar Date Motion for the liquidation of claims. (Limited Objection, Appx. Vol. II, pp. A110-12; BDE #2246 at pp. 6-8) The Bankruptcy Court responded that this was an issue that would be later addressed.

---

[1] The Debtors consist of PMH Acquisition, LLC, Broad Street Video, LLC, Philadelphia Newspapers, LLC, Philadelphia Direct, LLC, Philly Online, LLC, PMH Holdings, LLC, Broad Street Publishing, LLC, Philadelphia Media, LLC, and Philadelphia Media Holdings, LLC.  Philadelphia Media Holdings filed its voluntary petition for relief under chapter 11 on June 11, 2009.

Despite the objections of the CSMI Parties to these procedural shortcomings, the Debtors' Administrative Expense Bar Date Motion was approved in the form of an Order entered June 29, 2010, and amended July 2, 2010 (the "Administrative Expense Bar Date Order"), which set August 2, 2010 as the bar date deadline to file administrative claim requests against the Debtors for claims arising or accruing from and after the Petition Date through July 1, 2010. (Administrative Expense Bar Date Order, Appx. Vol. II, p. A126; BDE #2295 at p. 2)

### 2.    The filing of Appellants' Administrative Expense Requests.

The CSMI Parties timely filed, on August 2, 2010, certain Requests for Allowance of Administrative Claims against each of the Debtors (Claim Numbers 672 through 683) (the "Administrative Expense Requests"), asserting that the Debtors, after the Petition Dates, published additional false and misleading articles and engaged in related activity that form the basis of separate, post-petition defamation claims against certain of the Debtors, its reporters and editors, and Brian Tierney. (Claim Objection - Exhibit A, Appx. Vol. II, pp. A161-95; BDE #2466-1 at pp. 1-35) The CSMI Parties alleged that the Debtors created a charter school website page (the "Charter Page") containing links to various articles about charter schools, including the offending Articles about the CSMI Parties, that misled the public into concluding that the CSMI parties have engaged in wrongdoing as well as endorsing earlier writings making similar allegations as

accurate and exemplary reporting. (Claim Objection - Exhibit A, Appx. Vol. II, pp.
A175-77; BDE #2466-1 at pp. 15-17 ) The Debtors' Charter Page, accessible
universally at "http://go.philly.com/charter", presents a collection of more than
forty articles published in the Inquirer and online at "www.philly.com", nearly all
of which allege or report on allegations of improper and/or illegal conduct by
charter school managers, administrators, or board members, or that federal or state
officials are investigating the charter schools and the individuals connected with
those charter schools for improper and/or illegal conduct. Id. Beneath the title bar
for the Charter Page, the Articles are prominently displayed side by side as a
"marquee" -- "Charter raises scores; finances raises questions" and "Charter
schools' problems surfacing." Id.; (August 30 Transcript - Exhibit 2, Appx. Vol. II,
pp. A424-25) The Articles, which form the basis of the separate, prepetition State
Court Litigation defamation action, are not simply listed by title like the article
titles that follow.  Rather, they are enclosed in a separate box and contain
photographs to increase visual interest and garner attention.  Similar to the title of a
book, these two "marquee" Articles are designed and formatted to give the
impression that they encapsulate and describe the articles that follow. As the
reader's eye traces down the list of articles concerning the other charter school
managers, the reader is intentionally and maliciously led to believe that the CSMI
Parties are involved in the same types of alleged improper and illegal conduct of

these other charter schools and managers.

Specifically, through their Administrative Expense Requests, the CSMI

Parties alleged that the Debtors published an editorial article post-petition on April

11, 2010, titled "Not the Lesson Charters Were Supposed to Teach," by Inquirer

columnist Monica Yant Kinney (the "Kinney Article") that invites readers to visit

the Charter Page and insinuates that the CSMI Parties are among those charter

school operators that have misused public funds. (Administrative Expense Request

Memorandum, Appx. Vol. II, pp. A351-54, A361-63; BDE #2502 at pp 4-7, #2502-1

at pp. 1-3)

Each of the Administrative Expense Requests filed by the CSMI Parties

against the Debtors were similar in form and content, and each asserted an

estimated claim of $1,800,000.00 for the Debtors' post-petition acts of defamation

and $147,140.00 in damages for the Debtors' improper post-petition conduct and

prosecution of claims against the CSMI Parties. (Claim Objection - Exhibit A,

Appx. Vol. II, pp. A161-95; BDE #2466-1 at pp. 1-35) Each of the Administrative

Claims attached a memorandum setting forth the factual and legal foundation for

the allowance of an administrative claim under 11 U.S.C. § 503(b). Id.

### 3. The Debtors' Objection to the Administrative Expense Requests.

On or about August 23, 2010, the Debtors filed an Objection and Motion to

Dismiss Vahan Gureghian, Danielle Gureghian and Charter School Management,

Inc.'s Request for Allowance of Administrative Claims (the "Claim Objection")

and, on the same date, filed a Motion for Expedited Hearing ("Motion to

Expedite"). (Claim Objection, Appx. Vol. II, pp. A136-334; BDE #2466 at pp. 1-

299) (Motion to Expedite, Appx. Vol. II, pp. A335-41; BDE #2467   at pp. 1-7) On

the very next day, the CSMI Parties responded by filing a Preliminary Objection to

the Debtors' Motion to Expedite and Claim Objection ("Preliminary Objection to

Motion to Expedite"), asserting that hearing the Claim Objection on a shortened

and expedited basis, without a meaningful opportunity to engage in discovery and

to otherwise address and respond to the Claim Objection, would prejudice the due

process rights and interests of the CSMI Parties. (Preliminary Objection to Motion

to Expedite, Appx. Vol. II, pp. A342-45; BDE #2468 at pp. 1-4)

The Bankruptcy Court entered an Order Scheduling Expedited Hearing for

August 26, 2010 (the "August 26 Hearing") to consider the Debtors' Motion to

Expedite. (Order Scheduling Expedited Hearing, Appx. Vol. II, p. A346; BDE

#2472 at p. 1) At the August 26 Hearing, before the CSMI Parties had been

afforded the opportunity to file a responsive pleading to the Claim Objection or to

present evidence, testimony or argument in support of their Administrative

Expense Requests, the Bankruptcy Court announced that it had all but determined

that the Administrative Expense Requests were without merit. (Transcript of

August 26 Hearing, Appx. Vol. II, pp. A365-90; BDE #2532 at p. 1-27) The

Bankruptcy Court granted the Debtors' Motion to Expedite and scheduled an evidentiary hearing on the Claim Objection for August 30, 2010 ("Order Granting Expedited Hearing for August 30"), a mere seven days after the filing of the Claim Objection. (Transcript of August 26 Hearing, Appx. Vol. II, p. A388; BDE #2532 at p. 25)

The CSMI Parties, on August 30, 2010, filed a Memorandum of Law in Opposition to the Debtors' Claim Objection (the "Administrative Expense Request Memorandum"). (Administrative Expense Request Memorandum, Appx. Vol. II, pp. A348-363; BDE #2502 at pp. 1-12, #2502-1 at pp. 1-3)

A hearing was held by the Bankruptcy Court on August 30, 2010 on the Debtors' Claim Objection to the Administrative Expense Requests of the CSMI Parties (the "August 30 Hearing") and, after testimony and oral argument, the Bankruptcy Court denied the allowance of the Administrative Claims and entered an Order dated August 30, 2010 which provided "that for the reasons stated in open Court, the Request is denied in its entirety" (the "August 30 Order"). (August 30 Order, Appx. Vol. II, p. A391; BDE #2504 at p. 1)

The August 30 Order and related interlocutory rulings were appealed to the District Court. (District Court Docket, Appx. Vol. II, pp. A9-16; DDE # 1) After briefing by the parties, the District Court entered an Order dated July 19, 2011, and entered on the docket on July 20, 2011 (the "District Court Order"), affirming the

August 30, 2010 Bankruptcy Court Order. (District Court Order, Appx. Vol. I, pp.

A4-8; DDE #7 at p. 1-5)  This appeal followed.

## V.    STATEMENT OF RELATED CASES AND PROCEEDINGS

On or about January 6, 2009, Vahan Gureghian, Danielle Gureghian and

Charter School Management, Inc. filed the State Court Litigation against

Philadelphia Media Holdings, LLC, The Philadelphia Inquirer, Brian Tierney, Dan

Hardy, Derrick Nunnally, Martha Woodall and Rose Ciotta in the Court of

Common Pleas of Delaware County, Pennsylvania and docketed as 09-0091.

On February 22, 2009, the Debtors (with the exception of Philadelphia

Media Holdings, LLC which filed on June 11, 2009) filed separate voluntary

petitions for relief under Chapter 11 of Title 11 of the United States Code with the

United States Bankruptcy Court for the Eastern District of Pennsylvania that were

jointly-administered under case number 09-11204.

## VI.    STATEMENT OF THE STANDARD OF REVIEW

The standards of review applicable when the Court of Appeals reviews a

decision of the district court on appeal from the bankruptcy court are set forth in

Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981).

> As an appellate court twice removed from the primary
> tribunal, we review both the factual and the legal
> determinations of the district court for error.  The district
> court does not sit as a finder of facts in evaluating them
> as a court of review, and therefore its evaluation of the
> evidence is not shielded by the "clearly erroneous"

> standard of Fed.R.Civ.P. 52(a), which applies only to a
> *trial* court sitting as a fact finder.  We are in as good a
> position as the district court to review the findings of the
> bankruptcy court, so we review the bankruptcy court's
> findings by the standards the district court should
> employ, to determine whether the district court erred in
> its review.  To the extent the parties challenge the choice,
> interpretation, or application of legal precepts, we always
> employ the fullest scope of review: we examine the
> decision of the court from which the appeal is taken for
> error, and the legal determinations of the district court as
> a reviewing tribunal are not shielded by any presumption
> of correctness.

Id. at 101-02.

Appeals from the Bankruptcy Court are governed by Fed. R. Bankr. P. 8013

(Disposition of Appeals; Weight Accorded Bankruptcy Judge's Finding of Fact)

that, in setting forth a "clearly erroneous" standard for the review of findings of

fact, provides:

> On an appeal the district court or bankruptcy appellate
> panel may affirm, modify, or reverse a bankruptcy
> judge's judgment, order, or decree or remand with
> instructions for further proceedings.  Finding of fact,
> whether based on oral or documentary evidence, shall not
> be set aside unless clearly erroneous, and due regard shall
> be given to the opportunity of the bankruptcy court to
> judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013.

A finding of fact is "clearly erroneous" when "although there is evidence to

support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed."  United States v. United States

4606833                                    12

Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L. Ed. 746 (1948). The

District Court reviews the "Bankruptcy Court's legal determinations de novo, and

its factual findings for clear error, and its exercises of discretion for abuse thereof."

Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V. (In re

Lernout & Hauspie Speech Products, N.V.), 310 F.3d 118, 121 (3d Cir. 2002),

quoting, Prof'l Ins. Mgmt. v. Ohio Cas. Group of Ins. Cos. (In re Prof'l Ins.

Mgmt.), 285 F.3d 268, 282-83 (3rd Cir. 2002). "A bankruptcy court abuses its

discretion when its ruling is founded on an error of law or a misapplication of law

to the facts." Id. at 122, quoting, Manus Corp. v. NRG Energy, Inc. (In re O'Brien

Environmental Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999). The District Court

reviews the conclusions of law of the Bankruptcy Court de novo. In re Stanton L.

Segal, 57 F.3d 342, 345 (3d Cir. 1998), citing, In re Pelkowski, 990 F.2d 737, 739

(3rd Cir. 1993).

## VII.  **SUMMARY OF THE ARGUMENT**

The Bankruptcy and District Court erred in concluding that the Appellants

failed to meet their burden for the allowance of administrative claims under 11

U.S.C. § 503. The Administrative Expense Request was "actual and necessary to

preserve the estate" and arose from a post-petition transaction with the Debtors.

The Kinney Article, with its hyperlink to the Charter Page, itself disseminated false

and misleading information attributable to the CSMI Parties, and the District Court

erred in sustaining the finding of the Bankruptcy Court that the Kinney Article did

not constitute a separate and distinct post-petition act of republication.

The Bankruptcy Court made improper premature conclusions at the August

26, 2010, hearing on the Debtors' Motion for Expedited Hearing on the underlying

merit of the Appellants' Administrative Expense Request before a complete record

could be presented to the Bankruptcy Court and before the Appellants had the

opportunity to file a response in opposition to the Debtors' Claim Objection.

Further, Appellants' due process interests were infringed by being compelled to

participate in an expedited hearing on the Debtors' Claim Objections to the

Administrative Expense Requests with insufficient notice and opportunity to be

heard.

Finally, by focusing exclusively on the substantial consummation of the

Debtors' Plan, the District Court erred in finding the appeal of the August 30 Order

to be equitably moot.

## VIII. <u>ARGUMENT</u>

**A.    The District Court Erred in Sustaining the Finding of the Bankruptcy Court that the Appellants Failed to Meet their Burden for the Allowance of Administrative Claims under 11 U.S.C. § 503.**

*This issue is reviewed de novo.*

This Court should vacate or reverse the District Court Order and the

Bankruptcy Court's August 30 Order which it affirmed, because both courts erred

in concluding that the Appellants failed to meet their burden for the allowance of

an administrative claim under 11 U.S.C. § 503.

      **1.**    **The Statutory Elements under the Bankruptcy Code for an allowable administrative expense claim.**

Under 11 U.S.C. § 507(a)(1), administrative expenses allowed under

§503(b) have first priority in distribution and payment.  Section 503(b) of the

Bankruptcy Code provides, in relevant part, that:

> After notice and hearing, there shall be allowed, administrative expenses, other than claims allowed under 502(f) of this title, including—
>
> > (1)(A)  the actual, necessary costs and expenses of preserving the estate. . . .

11 U.S.C. § 503(b).

Determining whether a creditor has an administrative claim is a two-prong

test: the expense must have (1) been "actual and necessary" to preserve the estate,

and (2) arisen from a post-petition transaction between the creditor and the debtor.

Calpine Corp. v. O'Brien Environmental Energy Inc. (In re O'Brien Environmental

Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999).

      **a.**    **The Administrative Expense Request was "actual and necessary to preserve the estate."**

Section 503(b)(1)(A) of the Bankruptcy Code is broadly interpreted to

include "actual, necessary costs and expenses" that benefit the debtor's estate, both

directly and indirectly.  In re Cohen and Sons Caterers, Inc., 143 B.R. 27, 28

(Bankr. E.D. Pa. 1992).  Tort claims are "actual and necessary" in that they arise in the ordinary operation of business.  Cohen, 143 B.R. at 29, citing, Reading Co. v. Brown, 391 U.S. 471, 482 (1968).  Courts regularly grant administrative claim priority to those who are damaged by post-petition torts committed by the estate. Cohen, 143 B.R. at 28 (granting administrative claim status for injuries resulting from a slip and fall while on the debtor's business premises); In re Women First Healthcare, Inc., 332 B.R. 115 (Bankr. D. Del. 2005)(fundamental fairness required that a stalking horse bidder receive an administrative expense claim as compensation for its reliance on the debtor's negligent misrepresentations regarding the sale); In re Met-L-Wood Corp., 115 B.R. 133, 135-36 (Bankr. N.D. Ill. 1990)(authorizing administrative claim expense for party defending frivolous lawsuit by the trustee on the grounds of fundamental fairness); In re UAL Corp., 297 B.R. 710, 720 (Bankr. N.D. Ill. 2003)(injury caused by the tortious misrepresentations of a debtor in possession gives rise to an administrative claim).

> **b.    The Administrative Expense Request is a post-petition claim that arises from a "post-petition" transaction with the Debtors.**

As a general principal, "only those obligations of a debtor's estate which arise post-petition . . . are entitled to treatment as administrative expenses."  In re UAL Corp., 297 B.R. 710, 720 (Bankr. N.D. Ill. 2003), quoting, In re Boogaart of Florida, Inc., 23 B.R. 157, 158 (Bankr. S.D. Fla. 1982). The Debtors acknowledge

that the Kinney Article was first published post-petition. (Transcript of August 30

Hearing, Appx. Vol. II, p. A398:4-20) The Kinney Article, with its link to the

Charter Page, itself disseminated false and misleading information attributable to

the CSMI Parties. Accordingly, the Kinney Article constitutes an act of post-

petition republishing of the Articles.  The CSMI Parties provided evidence that (i)

tort claims committed by the estate have been judicially recognized as "actual and

necessary" expenses arising in the ordinary operation of business and (ii) that the

Administrative Expense Request arose from a post-petition transaction or

occurrence with the Debtors. (Administrative Expense Request Memorandum,

Appx. Vol. II, pp. A348-363; BDE #2502 at pp. 1-12, #2502-1 at pp. 1-3)

Accordingly, the District Court erred in sustaining the Bankruptcy Court's denial of

the Administrative Expense Request.

> **2.      The District Court Erred in Sustaining the Finding of the
> Bankruptcy Court that the Kinney Article did not
> constitute a Separate and Distinct Post-petition Act of
> Republication.**

The District Court erred in its conclusion that the Kinney Article was not an

actionable post-petition tort.  Of the five pages that comprise the District Court

Order, two discuss whether the Kinney Article, with its own defamatory content as

well as a hyperlink to the offending Articles, amounts to a post-petition tort.  As

will be discussed in detail below, in concluding that the republication exception to

the Single Publication Rule did not apply to the CSMI Parties' Administrative

Expense Request, the District Court relied on case law with operative facts that are

not only distinguishable from those here, but contain legal conclusions that are

supportive of a finding of an allowable administrative expense for the CSMI

Parties. (District Court Order, Appx. Vol. I, pp. A7-8; DDE #7 at pp. 4-5) Further,

the District Court erred in disregarding the offensive content of the Kinney Articles

and the contextual implications of the Kinney Article to the very substance of the

Articles. Id.

     In Pennsylvania, the statute of limitations for defamation claims is one year

from the date of publication. Manno v. Am. Gen. Finance Co., 439 F.Supp. 2d 418,

432 (E.D. Pa. 2006).  To avoid the potential for endless retriggering of the statute

of limitations, Pennsylvania has adopted the single publication rule, which holds

that for purposes of the statute of limitations, "any one edition of a book or

newspaper, or any one radio, television broadcast, exhibition of a motion picture or

similar aggregate communication is a single publication." Graham v. Today's

Spirit, 503 Pa. 454, 457 (Pa. 1983)(quoting *Restatement Second of Torts* §

577(A)(3)).  See also, 42 Pa. C.S.A. §8341(b).  Courts considering the single

publication rule in internet-based defamation cases have generally found it

applicable to postings made on internet websites accessible to the public.

Pendergrass v. Choicepoint, Inc., 08-188, 2008 U.S. Dist. LEXIS 99767, at *9

(E.D. Pa. Dec. 9, 2008)(collecting cases).

However, an exception to the single publication rule occurs upon republication.  Republishing material, including publishing a second edition or a book or periodical, editing and republishing defamatory material, or placing it in a new form, resets the statute of limitations.  Restatement (Second) of Torts §577A. In the context of internet publications, where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred.  Davis v. Mitan (In re Davis), 347 B.R. 607, 612 (W.D. Ky. 2006), citing, Firth v. State of New York, 775 N.E. 2d 463, 466 (N.Y. App. 2002); Churchill v. State of New Jersey, 876 A.2d 311, 319-20 (N.J. Super. 2005).

In the Administrative Expense Request Memorandum, Appellants presented a detailed analysis of the editorial article first published April 11, 2010 titled "Not the Lesson Charters Were Supposed to Teach," by Inquirer columnist Monica Yant Kinney.  (Administrative Expense Request Memorandum, Appx. Vol. II, pp. A351-359; BDE #2502 at pp. 4-12) The Kinney Article begins with the mocking musings of the author imagining her parents (who apparently worked in public schools) running a charter school in Pennsylvania and being able to "charg[e] granite countertops to taxpayers," be "reimbursed for family trips to Disney" and to employ her as a consultant at $100,000 to read Dr. Seuss. (Administrative Expense Request Memorandum - Exhibit A, Appx. Vol. II, pp. A361-363; BDE #2502-1 at pp. 1-3)  The Kinney Article continues in unrestrained fashion:

> Some city charter schools – think mastery, KIPP, Independence, Young Scholars – are soaring.  **But if you follow the remarkable reporting of my colleague Martha Woodall (http://go.philly.com/charter), you'll see greedy grown-ups pilfering public gold under the guise of enriching children's lives. [emphasis added].**

The Kinney Article entices the reader to view the Charter Page on "Philly.com" as a place where they will see "remarkable reporting" of "greedy grown-ups pilfering public gold."  Having taken the bait, the first thing a reader upon arriving at the Charter Page views is the highlighted marquee featuring the Articles about the CSMI Parties. Id. A reader of the Kinney Article is mislead into believing that the CSMI Parties have engaged in wrongful or illegal conduct at the expense of the education of children.

The Kinney Article, dated April 11 2010 (clearly post-petition), not only references bad and criminal behavior and attributes it to the Appellants, but also does much more.  It implies that Monica Yant Kinney has read, believes and endorses Woodall's "remarkable reporting" and urges readers to do so and accept Woodall's articles as true, and further states that the Appellants are "pilfering public gold" under the "guise" of educating children.  Id.

The CSMI Parties asserted that the Kinney Article, with its direction to the Charter Page and the offending Articles, constituted a separate and distinct act of post-petition republication supporting their claim for an allowable administrative expense claim.  (Administrative Expense Request Memorandum, Appx. Vol. II, pp.

A349-59; BDE #2502 at pp. 2-12) At the August 30 Hearing, the Debtors conceded that the Kinney Article was linked to the Charter Page after the Petition Date in April 2010, and that "it's just whether or not legally that amounts to republication. . . " and that "we agree that there was an article published on philly.com in April 2010 that linked to the web page at issue and I think that there's a legal question as to whether or not that's republication, and we maintain it is not." (Transcript of August 30 Hearing, Appx. Vol. II, p. A398:4-20) Accordingly, the question of whether the Kinney Article constituted a separate act of republication was a conclusion of law which, on appeal, is reviewed *de novo*. In re Li, 249 B.R. 388, 390 (E.D. Pa. 2000), quoting, Fleet Consumer Discount Co. v. Graves (In re Graves), 156 B.R. 949, 954 (E.D. Pa. 1993) ("de novo" review requires the district court to make its own legal conclusions "without deferential regard to those made by the bankruptcy court"). The District Court erred in concluding that the Kinney Article did not constitute a separate act of post-petition republication and this Court, in reviewing the issue *de novo*, should conclude to the contrary.

The District Court based its conclusion that the Kinney Article did not constitute a republication on the erroneous finding that it "merely posted a link to the charter school webpage that contained the original articles." (District Court Order, Appx. Vol. I, p. A7; DDE #7 at p. 4) The Kinney Article, however, did much more that make a blithe reference to a webpage. The cases cited by the District

Court in its Order involve distinguishing facts from those of this appeal and the

application of the instant facts to the rulings of these cases compel opposite results.

The District Court cited <u>Sundance Image Technology, Inc. v. Cone Editions</u>

<u>Press, Ltd.</u>, No. 02-cv-2258, 2007 WL 935703, at *6 (S.D. Cal., March 7, 2007)

for the proposition that "[l]inks to statements already published on the Web" are

"more reasonably akin to the publication of additional copies of the same edition of

a book which does not trigger the republication rule." (District Court Order, Appx.

Vol. I, pp. A7-8; DDE #7 at pp. 4-5) Likewise, the Bankruptcy Court was also

heavily influenced by <u>Sundance Image</u> in reaching its determination in the August

30 Order. (Transcript of August 30 Hearing, Appx. Vol. II, p.  A420:18-23)

However, a closer examination of the facts before the court in <u>Sundance</u>

<u>Image</u> reveal significant differences from those at bar. According to the <u>Sundance</u>

<u>Image</u> opinion, the plaintiff argued that the allegedly false statements were

republished when one of the defendants made an internet posting providing a link

to the statements.[2] <u>Sundance Image</u>, 2007 WL 935703, at *7. Under this limited

evidentiary and factual backdrop, the <u>Sundance Image</u> court made the following

statement:

> Plaintiff cites no authority holding that providing links to
> statements already published on the web, **without more**,
> republishes those statements.  Rather, the court finds that

---

[2] The reference to the record in the Sundance Image opinion is unclear about the nature and content of the internet postings that provided links to the statements and the Court seemed influenced by a prior evidentiary ruling deeming the copies of the internet postings to be inadmissible in the case.

> such linking is more reasonably akin to the publication of
> additional copies of the same edition of a book, which is
> a situation that does not trigger the republication rule.

Id. (citations omitted)(emphasis added).

The facts at bar are significantly different and compel a different result adopting the non-binding analysis of Sundance Image. The CSMI Parties do not contend that the Debtors' post-petition actions give rise to an allowable administrative expense due to some sort of passive and neutral website link to the Articles. Quite to the contrary, as argued by the CSMI Parties and conceded by the Debtors, following the Petition Date, the Debtors published and posted the Kinney Article to the internet which implored readers to visit the Debtors' Charter Page and made independent insinuations of wrongdoing against the Appellants. Using the words of Sundance Image, the Kinney Article was much "more" than a passive "link to statements already published on the web." The Kinney Article itself contained false and misleading information defamatory to the CSMI Parties. Thus, the post-petition publication of the Kinney Article, with its links to the Charter Page, constitutes a republication of the Articles and, contrary to the conclusions of the Bankruptcy and District Court, the CSMI Parties satisfied the element that an allowable administrative expense arise or relate to a post-petition transaction with the debtor.

Additionally, the plaintiff in <u>Sundance Image</u> submitted copies of the defendant's website showing a minor change of the header from "Piezography BW" to "Piezography Bwicc" (ostensibly reflecting defendant's new product "BW ICC") and argued that such a change amounted to a "new edition" of the website and a republication of the allegedly false statements contained in the hyperlink. <u>Sundance Image</u>, 2007 WL 935703, at *7. The court in <u>Sundance Image</u> determined that:

> a rational trier of fact could find that the header change, which was made because Defendants wanted to promote BW ICC and stop promoting its original product known as "Piezography BW", could constitute a new edition of the website since it appears the change was made deliberately and for a substantive purpose: to sell BW ICC and cease selling the original product.

<u>Id</u>.

However, while the court in <u>Sundance Image</u> concluded that as a matter of law the change to the website header was sufficient to constitute a republication, the court determined that the plaintiff failed to advance any evidence that the defendant's website was changed to "Piezography Bwicc" at any time <u>after</u> the commencement of the original statute of limitations, thus resulting in the barring of the claim under the statute of limitations. <u>Sundance Image</u>, 2007 WL 935703, at *8. Here, it is uncontroverted that after the Petition Date the Debtors published the Kinney Article with its own fresh and misleading statements attributable to the CSMI Parties. The Kinney Article, which was directed to a new audience of

reader, was linked to the Charter Page and the Articles. Thus, following the above-analysis of Sundance Image, these changes to the website would support a finding of a republication and the District Court erred in concluding otherwise.

The District Court cited Churchill v. State of New Jersey, 876 A.2d 311, 319 (N.J. Super. 2005) for a finding that a press release referencing a defamatory report and "invit[ing] visitors to the site to view the report" was not a republication because the release merely "altered the means by which website visitors could access the report, but . . . in no way altered the substance or form of the report." (District Court Order, Appx. Vol. I, p. A7; DDE #7 at p. 4) However, the Court in Churchill concluded that these updates were "merely technical changes to the website." Churchill, 876 A.2d at 319. For the reasons expressed above, the same cannot be said here. The Kinney Article contained its own offensive innuendo against the Appellants and exacerbated the harmful impact of the Articles.

The District Court citation of Mitan v. Davis, 243 F.Supp. 2d 719, 724 (W.D. Ky. 2003) involved the application of the single publication rule to defamation claims to an internet posting that remained static and unchanged. (District Court Order, Appx. Vol. I, p. A8; DDE #7 at p. 5)  As such, Mitan provides no guidance in determining the present issue of whether the Kinney Article constitutes a republishing of the Articles.  Interestingly though, a subsequent case, involving the same litigants, is much more instructive.  Davis v. Mitan (In re

Davis), 347 B.R. 607 (W.D. Ky. 2006).  In the preceding case of Mitan v. Davis,

libel claims arising from Davis' website proclaiming Mitan to be dishonest were

dismissed as barred by the one-year statute of limitations. Following dismissal,

Davis updated the website, adding "Breaking News!" and "Update!" sections and

listing additional wrongful activities of Mitan.  Davis, 347 B.R. at 610.  The court

found that the new material on the website to contain substantive information

related to the plaintiff sufficient to invoke the republication doctrine and cause a

resetting of the statute of limitations. Id. at 611-12.

Finally, the District Court cited Salyer v. Southern Poverty Law Ctr., Inc.,

701 F. Supp. 2d 912, 916-17 (W.D. Ky. 2009) for the stated proposition that a

reference to a previously-published article "may call the existence of the article to

the attention of a new audience, it does not present the defamatory contents of the

article to that audience" and finding that the same logic applies where a defamatory

article is hyperlinked. (District Court Order, Appx. Vol. I, p. A7; DDE #7 at p. 4)

However, the District Court conflates two separate lines of analysis of Salyer.

First, the Salyer Court observed that a "mere reference" to a previously published

article is not a republication because it does not present the defamatory contents of

the article to a new audience.  Salyer, 701 F.Supp. at 916.  The Court in Salyer

acknowledged that a stronger argument for republication can be made when the

original article is made available through a hyperlink intended to entice new

readers to click the link and be directed to the article. Id.  However, the Salyer

Court found that the substantive changes that triggered republication in Davis v.

Mitan were not present.  Id. at 917. Changes to the website at issue were unrelated

to the defamatory statements contained in the original article and the subsequent

article merely referenced and provided a passive hyperlink to the original

defamatory article. Id. at 916-18.

Unlike Salyer, the Kinney Article did not present a content-neutral reference

and hyperlink to the Articles.[3] To the contratry, the Kinney Article contained its

own offensive content against the Appellants and, given the context of the marquee

prominence of the Articles within the Charter Page, the Kinney Article unjustly

linked the Appellants with other charter school operators accused of wrongdoing.

**3.    The District Court Erred in Finding that the Kinney Article
could not sustain a Claim of Defamation because it did not
Specifically Identify Appellants.**

The District Court improperly concluded that the Kinney Article could not

sustain a claim for defamation because it did not specifically identify the

Appellants. As previously discussed, without qualification or reservation, the

Kinney Article used a broad brush to portray operators of Pennsylvania charter

schools as violating the public trust and endorsed and implored the reader to use

the hyperlink to read the reporting collected in Charter Page "to see greedy grown-

---

[3] See also, Firth v. State of New York, 775 N.E. 2d 463, 466 (N.Y. App. 2002)(finding no republication of a defamatory hyperlinked article when an additional report was added to the website that was unrelated to the defamatory material).

ups pilfering public gold under the guise of enriching children's lives."

(Administrative Expense Request Memorandum - Exhibit A, Appx. Vol. II, pp.

A361-63; BDE #2502-1 at pp. 1-3) Once at the Charter Page, the reader is

confronted by the Articles prominently displayed in the marquee. (August 30

Transcript - Exhibit 2, Appx. Vol. II, pp. A424-25) Here, the contents of the Kinney

Article and the context of the Charter Page use visual and verbal connotations to

falsely and maliciously imply through insinuation and innuendo that the Appellants

have acted improperly or illegally in managing CCCS' operations, despite the fact

that the CSMI Parties have no relation or affiliation to any of the other charter

school managers about which the *Inquirer* has reported on allegations of misuse of

charter funds, conflicts of interest and financial mismanagement.

Under Pennsylvania law, a communication is defamatory "if it tends to

blacken a person's reputation or expose him to public hatred, contempt, or ridicule,

or injure him in his business or profession." <u>Joseph v. Scranton Times L.P.</u>, 959

A.2d 322, 334 (Pa. Super. 2008); 42 Pa.C.S. § 8343. "When communications tend

to lower a person in the estimation of the community, deter third persons from

associating with him, or adversely affect his fitness for the proper conduct of his

lawful business or profession, they are deemed defamatory." <u>Id.</u> Similarly, when a

communication improperly imputes criminal conduct or behavior to a person, the

communication constitutes defamation *per se* without the need to prove actual

damages.  Brinich v. Jencka, 757 A.2d 388, 397 (Pa. Super. 2000).

Communications alleged to be defamatory must be viewed in context.

Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477-79 (E.D. Pa. 2010) (*citing* Baker

v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987); Agency Servs., Inc. v. Reiter,

513 F. Supp. 586, 587-88 (E.D. Pa. 1981) (in assessing whether statements are

capable of defamatory meaning "a court must weigh both the language of the

communication, and the context in which the communication is made")).

"Context" is a critical legal concept for determining whether, as a matter of law, a

communication is reasonably capable or susceptible of a defamatory meaning.

Klayman v. Segal, 783 A.2d 607, 614 (D.C. 2001). Alleged defamatory statements

should not to be read in isolation, but should be reviewed within the whole context

of the publication as the average, reasonable, intended reader would. Boule v.

Hutton, 138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001). "The touchstone in

determining whether a statement is capable of defamatory meaning is how the

statement would be interpreted by the average person to whom it was directed."

Id. (*citing* Marier v. Lance, Inc., No. 07-4284, 2009 WL 297713, at *3 (3d Cir.

Feb. 9, 2009) ("In analyzing whether or not a statement is defamatory,

Pennsylvania courts have held that "[t]he nature of the audience seeing or hearing

the remarks is ... a critical factor in determining whether the communication is

capable of a defamatory meaning.")). See also, <u>Fanelle v. Lojack Corp.</u>, No. 99-4292, 2000 WL 1801270, at *2-3 (E.D. Pa. Dec. 7, 2000) (concluding that claim for defamation by implication is viable under Pennsylvania law and finding that a promotional package issued by a vehicle theft detection company that included an undisputedly true article documenting plaintiff's arrest for vehicle theft charges was capable of defamatory meaning because taken as a whole it created the implication that the plaintiff was a thief).

Thus, the Kinney Article must be viewed in the context of its unrestrained assertion that Pennsylvania charter schools are being illegally or improperly managed as well as its beseeching the reader to use the hyperlink to the Charter Page to read more "remarkable reporting" of "greedy grown-ups pilfering public gold" where the Articles are prominently set apart as the marquee and inaccurately imply that they are representative of the other reporting appearing in the Charter Page. In publishing the Kinney Article and creating the Charter Page in this manner, the Debtors have harmed the good name and reputations of the CSMI Parties, have falsely imputed a want of integrity in the conduct of the CSMI Parties' business (a business which itself involves the public trust, i.e. the use of taxpayer expenditures and the education of children) and have exposed the CSMI Parties to ridicule by others in the community, separate and apart from the December 2008 Articles that form the basis of the prepetition defamation action.

**B.    The District Court Erred in Concluding that the Bankruptcy Court did not make Improper Premature Conclusions at the August 26, 2010, Hearing on the Debtors' Motion for Expedited Hearing.**

*This issue is reviewed de novo.*

Despite the fact that the CSMI Parties had not yet been afforded the opportunity to file a response to the Debtors' Claim Objection and that no evidence, testimony or oral argument had been presented by either party, the Bankruptcy Court at the August 26 Hearing on the determination of the Debtors' Motion to Expedite made no secret that it had already reached a determination on the merits of the CSMI Parties' Administrative Expense Claim. The District Court erred when it concluded that the Bankruptcy Court did not prejudge the Claim Objection. (District Court Order, Appx. Vol. I, pp. A5-6; DDE #7 at pp. 2-3)

However, the following excerpts from the record at the August 24 Hearing sharply illustrate the prejudgment made by the Bankruptcy Court on an incomplete record.

> "THE COURT:  **I see literally no possibility of you winning** the war.  I find this – if it isn't on the far side of frivolous, it's bordering hard along side of it.  **I can detect virtually no merit to this assertion of an administrative expense claim**."  (Transcript of August 26 Hearing, Appx. Vol. II, p. A379:8-13; BDE #2532 at p. 16) (emphasis added)
>
> "THE COURT:  I didn't want to mislead you as to what my preliminary sense of this is because **this really has no merit**, sir, not with respect to the alleged damages

that you posit have accrued post-petition by virtue of the
continued publication on the website of the information
that was the subject of the original lawsuit, nor the legal
fees incurred in connection with the defending of the
injunction action. (Transcript of August 26 Hearing,
Appx. Vol. II, p. A379:16-23; BDE #2532 at p. 16)
(emphasis added)

"THE COURT:  But it's going to take an enormous
amount of persuading to convince me that the allegations
of damage such that are contained in the initial lawsuit by
virtue of that controversial information being available
post-petition on a website, that there's some kind of on
going recoverable damage in the nature of a bankruptcy
estate administrative claim,  I just don't see it, I don't see
it at all." (Transcript of August 26 Hearing, Appx. Vol. II,
p. A380:12-18; BDE #2532 at p. 17)

Because of the perceived complexity of liquidating the CSMI Parties'

Administrative Expense Requests, the Bankruptcy Court closed the door to its

redress as an administrative claim; instead, expressing its preference that the claim

be prosecuted before the state court in the State Court Litigation:

"THE COURT:  But an administrative expense claim is
not the proper view for the pursuit of your recovery."
(Transcript of August 26 Hearing, Appx. Vol. II, p.
A383:4-5; BDE #2532 at p. 20)

"THE COURT:  So what would you have me do, Mr.
George [counsel for the CSMI Parties] try the defamation
case right now?"  (Transcript of August 26 Hearing,
Appx. Vol. II, p. A383:19-20; BDE #2532 at p. 20)

"THE COURT:  I don't think we are going to tee it up for
litigation here and I stand on my remarks about the
process.  I don't see – I see it all inextricably tied to the
original event, the original publication. And you might

say well, there's ancillary damage by virtue of
subsequent publications that were – I'm confident that
the State Court system can sort it out." (Transcript of
August 26 Hearing, Appx. Vol. II, pp. A384:21-A385:2;
BDE #2532 at p. 21-22)

"THE COURT:  Okay, but Mr. George, I have every
confidence that when the inevitable day in [state] Court
comes for your client, the plaintiff, if they are successful
in establishing liability for this entire course of events, I
have no doubt that they will be made whole by virtue of
whatever appropriate measure of damages is applied and
whatever damages are proven.  To, you know, to back
your way into a pre-verdict recovery via an
administrative expense claim would be – would be an
elevation of – I don't know if elevation of form over
substance is the right analogy here, but it does violence to
the entire order of litigation.  You don't have a verdict
yet.  You don't have a finding of liability. . . ."
(Transcript of August 26 Hearing, Appx. Vol. II, p.
A382:3-15; BDE #2532 at p. 19)

The Bankruptcy Court's prejudgment at the August 24 Hearing of the merits

of the CSMI Parties' Administrative Expense Request, before all the pleadings had

been filed, evidence submitted, testimony taken and oral argument made,

constitutes a reversible abuse of discretion.  See gen.  Francisco Sanchez v. Esso

Standard Oil Co., 572 F.3d 1, 16 (1st Cir. 2009)(finding that the district court

impermissibly prejudged the merits of the case at the preliminary injunction stage

by reaching a conclusion about liability).  This results in "a 'de facto'

consolidation, without notice, which [the court] cannot condone."  Id. at 19, citing,

T.M.T. Trailer Ferry, Inc. v. Union De Tronquistas De P.R. Local 901, 453 F.2d

1171, 1172 (1st Cir. 1971)(even where there was "no indication that [a party] would have produced further testimony if notified earlier that the entire case would be disposed of" after the preliminary injunction hearing, this did not "sanction the court in changing, *sub silentio*, the nature of the game at half-time.")  Just as a court may not arrive at a determination of liability at the preliminary injunction stage, the Bankruptcy Court should not have arrived at any prejudgment on the ultimate issue of the right to an administrative claim at the time it was deciding whether to schedule an expedited evidentiary hearing.

Far from the District Court's conclusion that the Bankruptcy Court was merely apprising the Appellants of its "preliminary impression," the transcript reveals that the Bankruptcy Court had all but reached an inflexible conclusion on the substantive merits of the Administrative Claim. (District Court Order, Appx. Vol. I, p. A6; DDE #7 at p. 3) At a time when the Appellants had not been afforded an opportunity to file any opposition to the Claim Objection, let alone present any evidence or testimony, the Bankruptcy Court decreed that it "s[aw] literally no possibility of [the CSMI Parties] winning the war. . . .[and that it detected] virtually no merit to this assertion of an administrative expense claim."  (Transcript of August 26 Hearing, Appx. Vol. II, p. A379:8-13; BDE #2532 at p. 16) Accordingly, the District Court erred in concluding that the Bankruptcy Court did not improperly prejudge the merits of the Administrative Claim.

**C.    The District Court Erred in Concluding that the Bankruptcy Court did not Infringe Appellants' Due Process Rights in Forcing Appellants to Participate in an Expedited Hearing on the Debtors' Objections to the Administrative Expense Requests with Insufficient Notice and Opportunity to be Heard.**

*This issue is reviewed as an abuse of discretion.*

The District Court's conclusion that the Bankruptcy Court did not err in considering the Claim Objection on an expedited basis should be reversed.

The Debtors' Motion for Expedited Hearing sought an expedited hearing on the Debtors' Claims Objection, asserting that the Debtors and the purchaser of the Debtors' assets needed resolution of administrative claims in order for the asset sale as contemplated by the Fourth Amended Plan of Reorganization ("Plan") to close as scheduled on August 31, 2010. (Motion to Expedite, Appx. Vol. II, p. A336; BDE #2467 at p. 2) At the August 26 Hearing, counsel for the Steering Group of Prepetition Secured Lenders which, in part comprised the interests that were to purchase the assets of the Debtors, stated that a hearing was necessary before August 31, 2010 to avoid the necessity of having to reserve and escrow the approximately $1.9 million contingent liability relating to the CSMI Parties' Administrative Expense Request which would deprive the company of working capital upon emergence. (Transcript of August 26 Hearing, Appx. Vol. II, p. A388:2-9; BDE #2532 at p. 25) The desire of the asset purchasers to avoid having to reserve and escrow the contingent liability hardly amounts to the "irreparable

harm" required to support a shortened notice period. See, Bay Harbor

Mgmt.v.Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 415

B.R. 77, 80 (S.D.N.Y. 2009)(cited by the District Court in the District Court

Order). The Debtors made no showing at the August 24 Hearing that the

consummation of the sale or viability of the Plan was in jeopardy if the Claim

Objection was not determined prior to August 31, 2010.

Further, the District Court failed to appreciate that the supposed "exigent

situation" that the Debtors used as a basis for their Motion to Expedite was of their

own making. The Debtors were aware of the certainty that parties, in general,

would file administrative claims and were on notice of the CSMI Parties' intent to

assert an administrative expense claim for post-petition defamation. Despite this

awareness, the Debtors waited until June 11, 2010 to file the Administrative

Expense Bar Date Motion, resulting in the setting of the administrative claims bar

date for August 2, 2010. (Administrative Expense Bar Date Motion, Appx. Vol. II,

pp. A83-94; BDE #2175 at p. 1-12) The administrative claims bar date requested

was less than 30 days before the Debtors claimed they needed resolution of these

administrative claims in order to effectuate closing. More troubling, the Debtors'

Claims Objection was filed on August 23, 2010, just one week prior to the

scheduled closing of the asset sale. (Claim Objection, Appx. Vol. II, pp. A136-60;

BDE #2466 at pp. 1-25)

The Bankruptcy Court acknowledged at the August 24 Hearing that the Debtors' Claim Objection was voluminous, that the CSMI Parties' Administrative Expense Claim had been pending for the better part of a month and "that potentially it was unfair for you [the CSMI Parties] to be required to ratchet up your case for a hearing on such short notice." (Transcript of August 26 Hearing, Appx. Vol. II, pp. A378:19-A379:2; BDE #2532 at p. 15-16) Having prejudged at the August 24 Hearing the CSMI Parties' Administrative Expense Request as meritless and, consequently, that no prejudice would flow to the CSMI Parties in the event of expedited consideration of what had, in effect, already been decided, the Bankruptcy Court scheduled an evidentiary hearing on the Claim Objection for August 30, 2010.[4] (Transcript of August 26 Hearing, Appx. Vol. II, p. A388:21-23; BDE #2532 at p. 25) The District Court erred when it concluded that the Bankruptcy Court's decision in granting the Motion to Expedite was not an abuse of discretion that infringed on the Due Process rights and interests of the CSMI Parties.

The Debtors sought an expedited hearing under a variety of statutory grounds, of which only Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 9006(c) and Local Bankruptcy Rule of the United States Bankruptcy Court for the Eastern District of Pennsylvania ("L.B.R.") 5070-1 are truly germane to a

---

[4] See VII B, *supra*, for a detailed discussion of the preliminary conclusions formed by the Bankruptcy Court at the August 24 Hearing.

request for an expedited hearing. Fed. R. Bankr. P. 9006(c) provides that a

bankruptcy court, "<u>for cause shown</u> may in its discretion with or without motion or

notice order the period reduced." Fed. R. Bankr. P. 9006(c) (emphasis added).

(Motion to Expedite, Appx. Vol. II, pp. A335-338; BDE #2467 at pp. 1-4) "In

exercise of its discretion per Bankruptcy Rule 9006(c), a court must consider,

primarily, the prejudice that potentially would result to parties entitled to notice is

effected, and weigh this against the reasons for shortening the period." <u>In re Grant</u>

<u>Broadcasting of Philadelphia, Inc.</u>, 71 B.R. 390, 397 (Bankr. E.D. Pa. 1987). The

decision of bankruptcy court to reduce the notice period under Fed. R. Bankr. P.

9006 is reviewed for an abuse of discretion. <u>In re Centric Corp.</u>, 901 F.2d 1514,

1517 (10th Cir. 1990), *cert. den.* 498 U.S. 852 (1990). Because the Bankruptcy

Court had prejudged the merits of the Administrative Expense Request, it did not

properly weigh the prejudice that would be imposed upon the CSMI Parties of

having to defend against the Claim Objection on shortened notice at an expedited

hearing. Moreover, the Bankruptcy Court did not consider the Debtors' delay in

filing the Claim Objections, their own responsibility in creating a need for an

immediate hearing or the possibility that these procedural exigencies were

intentional.

Similarly, L.B.R. 5070-1(f) provides an additional mechanism for requesting

an expedited hearing by motion and the decision to grant or deny such motion is

"within the discretion of the court, to be exercised in a sound and reasonable manner. . . . [and must] be reviewed for abuse of discretion.  In re Tobacco Road Associates, LP, No. 06-CV-2637, 2007 LEXIS 22990, at *48 (E.D. Pa. March 30, 2007).  An "abuse of discretion" will be found when the judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria or procedures are used.  In re American Classic Voyages, Co., 298 B.R. 222 (D. Del. 2003).  The appellate court reviews whether the bankruptcy court violated a party's right to procedural due process *de novo*.  Lagenkamp v. Hackler (In re Republic Trust & Sav. Co.), 897 F.2d 1041, 1043 (10th Cir. 1990), *rev'd on other grounds*, 498 U.S. 42 (1990).  For the reasons set forth above, because the Bankruptcy Court prejudged the merits of the Administrative Expense Request at the August 26 Hearing and because the Bankruptcy Court never considered the Debtors' own culpability in the delay of filing of the Claim Objections and the supposed need for shortened notice, the Bankruptcy Court failed to make a reasoned determination of the need for and harm resulting from expedited consideration of the Claim Objection. Accordingly, the decision of the District Court that the Bankruptcy Court did not err in granting the Motion to Expedite should be reversed on appeal.

Under the Due Process Clause of the United States Constitution, creditors holding claims against the bankruptcy estate must be given reasonable notice and opportunity to be heard before their claims are disallowed. "The purpose of notice

under the Due Process Clause is to apprise the affected individual of, and permit

adequate preparation for, an impending hearing." Memphis Light, Gas & Water

Div. v. Craft, 436 U.S. 1, 14 (1978) (quotation omitted). "The fundamental

requirement of due process is the opportunity to be heard 'at a meaningful time and

a meaningful manner.'" Anthony v. Interform Corp., 96 F.3d 692, 697 (3d Cir.

1996) (quotations omitted). The scheduling of the August 30 Hearing, just seven

days after the filing of the Debtors' Claim Objection, prevented the CSMI Parties

from adequately preparing defenses to the Debtors' Claim Objection as well

precluding them, on a practical basis, from engaging in discovery in further

support of the Administrative Expense Requests.

For these reasons, the District Court's conclusion that the Bankruptcy Court

did not err in considering the Claim Objection on an expedited basis should be

reversed.

### D.    The District Court Erred in Finding that the Appeal of the August 30 Order was Equitably Moot.

*This issue is reviewed de novo.*

The District Court concluded without further analysis that the appeal should

be dismissed as equitably moot on the grounds that the Plan had been substantially

consummated and no stay was sought. Citing, In re Continental Airlines, 91 F.3d

553, 560 (3d Cir. 1996). (District Court Order, Appx. Vol. I, p. A5; DDE #7 at p. 2)

The District Court erred in reaching its conclusion as not all of the factors

necessary for a finding of equitable mootness are present here.

The doctrine of equitable mootness is "limited in scope and should be

cautiously applied." In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

The Third Circuit recognizes the following five factors to be evaluated to

determine if an appeal from a bankruptcy case is equitably moot:

(1) whether the reorganization plan has been substantially consummated;

(2) whether a stay has been obtained;

(3) whether the relief requested would affect the rights of parties not before the court;

(4) whether the relief requested would affect the success of the plan; and

(5) the public policy of affording finality to bankruptcy judgments.

Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001);

Continental Airlines, 91 F.3d at 560.

An application of these factors to the facts of this appeal reveals insufficient

grounds as a matter of law for a finding of equitable mootness.  First, counsel for

the Steering Group of Prepetition Secured Lenders which, in part comprised the

interests that were to purchase the assets of the Debtors, took part in the August 26

Hearing. (Transcript of August 26 Hearing, Appx. Vol. II, p. A388:2-9; BDE #2532

at p. 25) Philadelphia Media Network, Inc. ("PMNI"), the purchaser of Debtors'

assets pursuant to the Plan, assumed the role of the Appellee for the briefing before

the District Court. (Appellee Brief, Appx. Vol. II, pp. A53, fn 1; DDE #5 at p. 5)

Thus, is cannot be said that the relief requested in this appeal would affect the

rights of parties not before the court.

Second, while the Plan has been consummated, the relief requested in the

appeal would not affect the success of the Plan.  PMNI assumed financial

responsibility for allowed administrative claims under the Asset Purchase

Agreement and the Plan. (Appellee Brief, Appx. Vol. II, pp. A69; DDE #5 at p. 22)

The amount of the Administrative Expense Request, however, is miniscule in

comparison to the price paid under the Asset Purchase Agreement and it cannot

now be credibly claimed that the outcome of the Administrative Expense Claim

would have any material impact on the price paid or the parties proceeding to

Closing.  If it truly was essential for the Appellee to have a fixed liability for

allowed administrative claims prior to closing, it should have insisted that the

Debtors formulate a process for the filing and adjudication of contested

administrative claims that would have resulted in the entry of final orders prior to

the August 31 Closing.  In fact, the CSMI Parties expressed these very concerns in

its Limited Objection. (Limited Objection, Appx. Vol. II, pp. A110-12; BDE #2246

at pp. 6-8) However, the Debtors, with the apparent consent of PMNI, obtained

approval of a deadline of August 2, 2010 for the filing of administrative claim

requests, a mere 29 days prior to the August 31 Closing, and then waited until the

night of August 23, 2010 to file the Claim Objection. As such, the Appellee was

responsible for, or at least played a part in, the scheduling of the administrative

claims allowance process hard against the Closing and should not be the

beneficiary of an estoppel argument.

By focusing exclusively on the substantial consummation of the plan

without a stay, the District Court ignored the other factors relevant to a

determination of equitable estoppel. (District Court Order, Appx. Vol. I, p. A5;

DDE #7 at p. 2) As such, the District Court's conclusion that the appeal is equitably

moot should be reversed.

## IX.    **CONCLUSION**

Consistent with the preceding arguments, the CSMI Parties respectfully

request that the District Court's Order be reversed.

Respectfully Submitted,

Dated: January 9, 2012      By: /s/ Edmond M. George
                                Edmond M. George, Esquire
                                D. Alexander Barnes, Esquire
                                OBERMAYER REBMANN MAXWELL &
                                HIPPEL LLP
                                One Penn Center, 19th Floor
                                1617 John F. Kennedy Blvd.
                                Philadelphia, PA 19103-1895
                                Telephone: (215) 665-3100
                                Facsimile: (215) 665-3165

                                *Counsel for Appellants Vahan Gureghian,*
                                *Danielle Gureghian and Charter School*
                                *Management, Inc.*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am admitted to practice before both the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit.

Dated: January 9, 2012      By: <u>/s/ Edmond M. George</u>
                                Edmond M. George, Esquire
                                OBERMAYER REBMANN MAXWELL &
                                HIPPEL LLP
                                One Penn Center, 19th Floor
                                1617 John F. Kennedy Blvd.
                                Philadelphia, PA 19103-1895
                                Telephone: (215) 665-3100
                                Facsimile: (215) 665-3165

                                *Counsel for Appellants Vahan Gureghian,*
                                *Danielle Gureghian and Charter School*
                                *Management, Inc.*

4606833

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

*Certificate of Compliance With Type-Volume Limitation,*
*Typeface Requirements, and Type Style Requirements*

This brief complies with the type-volume limitation of Fed. R. App. P 28.1(e)(2)(B)(i) because this brief contains 10,456 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typefaced requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2003 in Times New Roman, Font 14.

Dated: January 9, 2012      By: <u>/s/ Edmond M. George</u>
                                Edmond M. George, Esquire
                                OBERMAYER REBMANN MAXWELL &
                                HIPPEL LLP
                                One Penn Center, 19th Floor
                                1617 John F. Kennedy Blvd.
                                Philadelphia, PA 19103-1895
                                Telephone: (215) 665-3100
                                Facsimile: (215) 665-3165

                                *Counsel for Appellants Vahan Gureghian,*
                                *Danielle Gureghian and Charter School*
                                *Management, Inc.*

4606833

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

Edmond M. George, Attorney for Appellants, hereby certifies that the text of the electronically filed Brief and hard copies of Appellants' Brief served upon the Court are identical.

Dated: January 9, 2012    By: <u>/s/ Edmond M. George</u>

                       Edmond M. George, Esquire
                       OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                       One Penn Center, 19th Floor
                       1617 John F. Kennedy Blvd.
                       Philadelphia, PA 19103-1895
                       Telephone: (215) 665-3100
                       Facsimile: (215) 665-3165

                       *Counsel for Appellants Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc.*

## <u>CERTIFICATE OF VIRUS CHECK</u>

     Edmond M. George, Attorney for Appellants, hereby certifies that he has performed a virus check of the electronically filed Brief, using Symantec Endpoint Protection 11.0.5002.333.

Dated: January 9, 2012    By: <u>/s/ Edmond M. George</u>

                          Edmond M. George, Esquire
                          OBERMAYER REBMANN MAXWELL &
                          HIPPEL LLP
                          One Penn Center, 19th Floor
                          1617 John F. Kennedy Blvd.
                          Philadelphia, PA 19103-1895
                          Telephone: (215) 665-3100
                          Facsimile: (215) 665-3165

                          *Counsel for Appellants Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc.*

4606833

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 9th day of January, 2012, electronically filed the herein Brief of Appellants with the Court, as well as sent ten (10) copies via Hand Delivery (1/9/12) of the Brief of Appellants and Volume I of the Appendix and four (4) copies of Volume II of the Appendix. Counsel has also been served electronically by the Notice of Docket Activity and via overnight delivery as follows:

Andrew C. Kassner, Esquire
Andrew J. Flame, Esquire
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

Fred S. Hodara, Esquire
Abid Qureshi, Esquite
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

Dated: January 9, 2012        By: /s/ Edmond M. George
                                   Edmond M. George, Esquire
                                   OBERMAYER REBMANN MAXWELL &
                                   HIPPEL LLP
                                   One Penn Center, 19th Floor
                                   1617 John F. Kennedy Blvd.
                                   Philadelphia, PA 19103-1895
                                   Telephone: (215) 665-3100
                                   Facsimile: (215) 665-3165

                                   *Counsel for Appellants Vahan Gureghian,
                                   Danielle Gureghian and Charter School
                                   Management, Inc.*

4606833