IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-3257

_____

VAHAN H. GUREGHIAN, DANIELLE GUREGHIAN, AND CHARTER SCHOOL MANAGEMENT, INC.,
*Appellants,*

—v.—

PHILADELPHIA NEWSPAPERS, LLC, *et al.,*
*Appellees/Debtors.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Case No. 10-7098

_____

**BRIEF OF APPELLEE**

**DRINKER BIDDLE & REATH LLP**
Andrew C. Kassner
Andrew J. Flame
David F. Abernethy
One Logan Square
Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Fax: (215) 988-2757

—and—

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Abid Qureshi
Sunish Gulati
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Attorneys for Philadelphia Media Network, Inc.*

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and**
**Statement of Financial Interest**

No. 11-3257

Vahan H. Gureghian, et al.

v.

Philadelphia Newspapers LLC

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1,  PHILADELPHIA MEDIA NETWORK INC.
following disclosure:                                                        makes the
                                                    (Name of Party)

      1) For non-governmental corporate parties please list all parent corporations:


N/A


      2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:


N/A


      3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:


N/A


      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.


_____          Dated: September 22, 2011
(Signature of Counsel or Party)                        _____


(Page 2 of 2)


rev: 11/2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ...............................3

STATEMENT OF THE FACTS............................................................................3

    A.    Appellants' State Court Defamation Action.........................................3

    B.    Appellants' Administrative Expense Claim .........................................4

    C.    The Debtors' Objection and Motion to Expedite .................................5

    D.    Hearing on the Motion to Expedite .......................................................6

    E.    Appellants' "Republication" Argument ...............................................8

    F.    Hearing on the Administrative Expense Request.................................8

    G.    The Bankruptcy Court's Ruling ............................................................9

    H.    Appeal to the District Court .................................................................10

STANDARD OF REVIEW .................................................................................10

SUMMARY OF ARGUMENT............................................................................12

ARGUMENT .....................................................................................................13

    A.    The District Court Did Not Abuse its Discretion in Holding that the Appeal is Equitably Moot..............................................................13

    B.    The District Court Correctly Held that the Bankruptcy Court Did Not Abuse its Discretion by Denying Debtors' Administrative Claim Request ..........................................................17

    C.    The District Court Correctly Held that the Bankruptcy Court Did Not Err in Scheduling the August 30 Hearing or in Expressing its Preliminary View before the August 30 Hearing ........23

CONCLUSION ...................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Abate v. Me. Antique Digest*,
No. 03-3759, 2004 WL 293903 (Mass. Super. Ct. Jan. 26, 2004) ....................22

*Advantage Healthplan, Inc. v. Potter*,
391 B.R. 521 (D.D.C. 2008), *aff'd,* 586 F.3d 1 (D.C. Cir. 2009)......................25

*Carroll v. Astrue*,
No. 09-4149, 2010 WL 4121160 (3d Cir. Oct. 21, 2010) ..................................24

*Charter Sch. Mgmt., Inc. v. Philadelphia Media Holdings, LLC*,
Civ. A. No. 09-0094 (Del. Ct. Com. Pl. Del. Cty.) .............................................3

*Churchill v. State of N.J.*,
876 A.2d 311 (N.J. Super. Ct. 2005) ..................................................................21

*E.B. v. Liberation Publs., Inc.*,
7 A.D.3d 566 (N.Y. 2004) ..................................................................................22

*Iafrate v. Hadest*,
621 A.2d 1005 (Pa. Super. Ct. 1993)..................................................................20

*In re Aspen Limousine Serv., Inc.*,
193 B.R. 325 (D. Colo. 1996)........................................................................18, 19

*In re Bryen*,
--- F. App'x ---, No. 11-1616, 2011 WL 5248233 (3d Cir. Nov 4, 2011) .........11

*In re Chester Cty. Plastics, Inc.*,
174 B.R. 41 (E.D. Pa. 1994) ..............................................................................11

*In re Cont'l Airlines*,
91 F.3d 553 (3d Cir. 1996) ........................................................................passim

*In re Dant & Russell, Inc.*,
853 F.2d 700 (9th Cir. 1988) ......................................................................10, 18

*In re Genesis Health Ventures, Inc.*,
204 F. App'x 144 (3d Cir. 2006) ........................................................................15

*In re George,*
    4 F. App'x 357 (9th Cir. 2001) .......................................................................24

*In re Horizon Natural Res. Co.,*
    162 F. App'x 393 (6th Cir. 2005) ..................................................................25

*In re Johns-Manville Corp.,*
    600 F.3d 135 (2d Cir. 2010) ..........................................................................25

*In re Lehman Bros. Holdings, Inc.,*
    415 B.R. 77 (S.D.N.Y. 2009) ........................................................................24

*In re O'Brien Envt'l Energy, Inc.,*
    181 F.3d 527 (3d Cir. 1999) ..........................................................................18

*In re Photo Promotion Assocs., Inc.,*
    881 F.2d 6 (2d Cir. 1989) ...............................................................................11

*In re Reading Broad.,*
    No. 08-1775, 2008 WL 3540212 (E.D. Pa. Aug. 8, 2008).....................12, 14 15

*In re Reliant Energy Channelview LP,*
    594 F.3d 200 (3d Cir. 2010) ..........................................................................17

*Rodriguez v. EMC Mortgage Corp. (In re Rodriguez),*
    No. 00-50657, 252 F.2d 435. 2001 WL 360713 (5th Cir. Mar. 15, 2001).........24

*In re SGPA, Inc.,*
    34 F. App'x 49 (3d Cir. 2002) ........................................................................14

*In re SK Foods, L.P.,*
    No. Civ. S-10-810, 2010 WL 5136187 (E.D. Cal. Dec. 10, 2010) ...................24

*In re Stingfree Techs. Co.,*
    427 B.R. 337 (E.D. Pa. 2010) ........................................................................23

*In re Tobacco Road Assocs., LP,*
    No. Civ. 06-2637, 2007 WL 966507 (E.D. Pa. Mar. 30, 2007) ..................11, 26

*In re Trans World Airlines, Inc.,*
    182 B.R. 102 (D. Del. 1995), *aff'd in part, rev'd in part on other
    grounds,* 96 F.3d 687 (3d Cir. 1996) ............................................................19

*In re Zenith Electronics Corp.,*
    329 F.3d 338 (3d Cir. 2003) ..........................................................................13

*Lane v. Strang Commc'ns Co.*,
　297 F. Supp. 2d 897 (N.D. Miss. 2003)..............................................................22

*McCandliss v. Cox Enters., Inc.*,
　593 S.E.2d 856 (Ga. App. 2004) .......................................................................22

*Mitan v. Davis*,
　243 F. Supp. 2d 719 (W.D. Ky. 2003)................................................................22

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*,
　258 F.3d 180 (3d Cir. 2001) ..............................................................................14

*Oja v. Fink*,
　No. Civ. 02-6301, 2003 WL 23996035 (D. Or. Feb. 26, 2003), *aff'd,* 440
　F.3d 1122 (9th Cir. 2006) ..................................................................................22

*Otte v. United States*,
　419 U.S. 43 (1974)..............................................................................................19

*Pa. Dep't of Envt'l Res. v. Tri-State Clinical Labs., Inc.*,
　178 F.3d 685 (3d Cir. 1999) ........................................................................ 17-18

*Parents United For Better Sch., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*,
　148 F.3d 260 (3d Cir. 1998) ..............................................................................12

*Reading Co. v. Brown*,
　391 U.S. 471 (1968)............................................................................................19

*Salyer v. S. Poverty Law Ctr., Inc.*,
　701 F. Supp. 2d 912 (W.D. Ky. 2009)................................................................21

*SemCrude L.P. v. Manchester Secs. Corp.*,
　No. 11-1724, 2012 WL 8597 (3d Cir. Jan. 3, 2012)...................................11, 13

*Simon v. Ariz. Bd. Of Regents*,
　28 Media L. Rep. (BNA) (Ariz. Super. Ct. 1999) ............................................22

*Singh v. Att'y Gen. of U.S.*
　385 F. App'x 184, 2010 WL 2616865 (3d. Cir. July 1, 2010)..........................11

*Skretvedt v. E.I. DuPont De Nemours*,
　372 F.3d 193 (3d Cir. 2004) ..............................................................................23

*Smith v. Wagner*,
　588 A.2d 1308 (Pa. Super. Ct. 1991)................................................................20

iv

*Sundance Image Tech., Inc. v. Cone Eds. Press, Ltd.*,
  No. 02 CV 2258, 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ...........................21

*Traditional Cat Ass'n, Inc. v. Gilbreath*,
  13 Cal. Rptr. 3d 353 (App. 4th 2004) ................................................................22

*Van Buskirk v. N.Y. Times Co.*,
  325 F.3d 87 (2d Cir. 2003) ................................................................................22

## STATUTES

11 USCA § 503(b) ...................................................................... 20, 22-23

## OTHER AUTHORITIES

Bankruptcy Rule 5070-1 .........................................................................26

Bankruptcy Rule 8005 ............................................................................15

Bankruptcy Rule 9014-2 .........................................................................26

Fed. R. Bankr. P. 8010 ...........................................................................23

Fed. R. Bankr. P. 9006 ...........................................................................26

Philadelphia Media Network Inc.,[1] by and through its undersigned counsel, respectfully submits as follows:

## PRELIMINARY STATEMENT

The present appeal (the "Appeal") arises out of a frivolous request for the allowance of administrative claims (the "Request") filed by Appellants in the chapter 11 cases of Philadelphia Newspapers, LLC, *et al.* (the "Debtors"), based on a pre-petition defamation action which was filed by Appellants against certain of the Debtors.  The defamation action, which itself is meritless, is based on certain articles published on an internet web page in December 2008, well before any of the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. Two lower courts have now found that these articles cannot give rise to any post-petition administrative expense claim because, among other things, (i) defamation and other publication-based tort claims accrue only when the articles are first published, and (ii) neither the articles nor the web page which contained them were published or modified in any way after the petition date.  Appellants nevertheless continue to press an argument before this Court that the publication of a post-petition article which made no mention of Appellants, which was never mentioned

---

[1] Pursuant to the Fifth Amended Joint Chapter 11 Plan as of September 24, 2010, confirmed by the United States Bankruptcy Court for the Eastern District of Pennsylvania in the chapter 11 cases of the Debtors, Philadelphia Media Network Inc., as purchaser of substantially all of the Debtors' assets, possesses the rights of a party in interest for all matters related to the Debtors' chapter 11 cases, including this appeal.

in the Request, and which had never been alleged to be defamatory in any proceeding, somehow constituted a post-petition tort. This argument, which has now been twice-rejected, is based on the theory that an internet "hyperlink" contained in this article, which linked to the web page that housed the allegedly defamatory articles at issue in the pre-petition defamation action, constituted a "republication" of the allegedly defamatory material. Appellants did not, and still cannot, cite any authority from any jurisdiction in support of this theory. Indeed, every court to consider such a "hyperlinking" argument has soundly rejected it.

On appeal to the District Court, Appellants argued not only that the Bankruptcy Court abused its discretion in refusing to allow their specious administrative claim request, but that the Bankruptcy Court violated their "due process" rights by scheduling an expedited hearing on the issue, even though Appellants consented to the hearing date. Appellants also argued that the Bankruptcy Court abused its discretion by "prejudging" the merits of the issue at a preliminary hearing, even though the Bankruptcy Court then allowed a full evidentiary hearing to proceed on the issue and afforded Appellants a full opportunity to present their case. The District Court soundly rejected each of Appellants' frivolous arguments. The District Court also held – correctly – that this appeal was equitably moot because, among other things, the plan has long been substantially consummated and Appellants failed to seek any stay of the order

they now appeal.  The well-reasoned opinions of the Bankruptcy Court and District Court must stand.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The case is related to a defamation action filed in January 2009 by Appellants in the Court of Common Pleas of Delaware County, captioned *Charter Sch. Mgmt., Inc. v. Philadelphia Media Holdings, LLC*, Civ. A. No. 09-0094 (Del. Ct. Com. Pl. Del. Cty.) (the "State Court Action"), and to the chapter 11 cases filed by Philadelphia Newspapers, LLC, *et al.* in the Eastern District of Pennsylvania that were jointly-administered under case number 09-11204.

## STATEMENT OF THE FACTS

### A.    Appellants' State Court Defamation Action

The Appellants' administrative expense claim arises out of the State Court Action.  In that action, the Appellants alleged that certain articles (the "Articles") relating to Appellant Charter School Management, Inc, which were published on a philly.com web page (the "Web Page") were defamatory.  The Defendants in the State Court Action have all objected to these claims as legally frivolous.  (See Appx. Vol. II, pp. A204-07; Debtors' Objection and Motion to Dismiss Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc.'s Request for Allowance of Administrative Claims ("Objection") Ex. C (BDE #2466)).  Each of the articles at issue in the State Court Action were published on the Web Page in

December 2008, well before the Debtors commenced their bankruptcy proceedings on February 22, 2009 (the "Petition Date").[2]

### B.    Appellants' Administrative Expense Claim

The Appellants filed their Requests for Allowance of Administrative Claims (the "Request") on August 2, 2010, which was the deadline established by the Bankruptcy Court for the filing of administrative claims (the "Administrative Claim Bar Date").  In their Request, the Appellants claimed that millions of dollars in unliquidated, disputed and contingent damages arising from the publication of the Articles on the Web Page should be given administrative expense priority, despite Appellants' admission that those Articles were the same pre-petition Articles at issue in the State Court Action.  (See Appx. Vol. II, pp. A176; Objection Ex. A at 3 (noting that the administrative expense claim arises out the articles "that form the basis of a separate, prepetition defamation action against certain of the debtors, Brian Tierney, and reporters and editors of the Articles")).[3]   Nevertheless,

---

[2] Appellants misleadingly claim that "[a]t all times, material hereto, the bankruptcy cases of Philadelphia Newspapers, LLC, et al. . . . were pending before the United States Bankruptcy Court for the Eastern District of Pennsylvania (the 'Bankruptcy Court')." (Appellants' Br. at 2).  However, the bankruptcy cases of Philadelphia Newspapers, LLC were not pending before the Bankruptcy Court at the time the Articles were published on the Web Page.  The Debtors, with the exception of Philadelphia Media Holdings, LLC ("PMH"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on February 22, 2009.  PMH filed a voluntary petition for relief under chapter 11 on June 10, 2009.

[3] Appellants misleadingly represent in their Appeal Brief that they "alleged through their Administrative Expense Requests that (i) after the petition date the

4

the Appellants argued that their unliquidated, disputed and contingent claims

should be treated as an administrative expense of the estate because the Web Page

(which still contains the Articles) "even to this day, continues to falsely,

misleadingly and maliciously insinuate and imply that the Claimants are nothing

more than common criminals who are operating their businesses in an improper

and untoward manner."  (Id.)  The Appellants did not allege, in either the State

Court Action or before the Bankruptcy Court, that the Web Page had been changed

or modified in any way since December 2008.

### C.    The Debtors' Objection and Motion to Expedite

The Debtors filed their Objection to the Request and a motion for expedited

consideration of their objection (the "Motion to Expedite") on August 23, 2010.

(Appx. Vol. II, pp. A136, 335; BDE #2466, 2477).  In their Objection, the Debtors

argued that the Articles could not give rise to any post-petition tort claim under the

Uniform Single Publication Act ("USPA").  (*See* Appx. Vol. II, pp. A150;

Objection at 15 (citing 42 Pa. Cons. State § 8341(b)).  Specifically, the Debtors

argued that pursuant to the single publication rule, as codified in Pennsylvania's

USPA, "it is the original printing of the defamatory material and not the circulation

---

Debtors created a charter school website page. . . and (ii) an editorial article first
published [in] April 11, 2010" which where purportedly defamatory.  (Brief of
Appellants at 6).  As described in hereinafter below, they did no such thing.  The
Requests make no mention of any article published in April 2010 (or at any time
after the Petition Date), nor do they allege that the Web Page or any of the Articles
at issue were created after the Petition Date.

of it which results in a cause of action." (Appx. Vol. II, pp. A151-152; Objection at

16 (collecting cases and noting that courts have been virtually unanimous in

holding that the single publication rule applies to internet postings)). The Debtors

also cited their numerous prior statements (including statements made on the

record at the confirmation hearing) which established that the Web Page had not

been modified since the Petition Date. (Appx. Vol. II, pp. A151-53; *id.* at 16-18).

In addition, the Debtors attached a declaration of the Editor and Vice-President for

Content of Debtors Philly Online LLC (the "Declaration of Wendy Warren") which

provided further uncontroverted evidence that that the Web Page had not been

modified in any way since the petition date, and showed that the Debtors had

actually taken steps to ensure that even the format of the Web Page would not

change after the Petition Date. (Appx. Vol. II, pp. A197-200; Opposition Ex. B. ¶¶

15-17 (indicating that the Web Page had been "pinned," which is a "process that

ensures that the page layout remains in exactly the same format that it held from its

creation date")). On August 24, 2010, the Appellants filed an Objection to the

Debtors' Motion to Expedite. (Appx. Vol. II, pp. A342; BDE #2468).

### D.      Hearing on the Motion to Expedite

The Court held a hearing on the Motion to Expedite on August 26, 2010 (the

"August 26 Hearing"). (Appx. Vol. II, pp. A364; BDE #2532). At that hearing, the

Court expressed its preliminary view that the Request had "no merit," "not with

respect to the alleged damages that [Appellants] posit have accrued post-petition

by virtue of the continued publication on the website of the information that was the subject of the original lawsuit, nor the legal fees incurred in connection with the defending of the injunction action."  (Appx. Vol. II, pp. A379; *id.* at 16:18-23).  The Court made clear that it was not ruling on the merits of the Request, but wanted to express its preliminary sense so the Appellants could "factor it into [their] consideration of whether [they] wanted to invest any more resources in fighting on this particular hill."  (Appx. Vol. II, pp. A388; *id.* at 25:15-17).  Nevertheless, the Court repeatedly invited the Appellants to propose a schedule and process for resolving the merits of the Request, and emphasizing that the Court would "give [Appellants] a hearing if you wish to make a record for purposes of attempting to, you know, persuade me to change my mind based on my preliminary take of what this is about."  (Appx. Vol. II, pp. A386; *id.* at 23:20-23; *see also* Appx. Vol. II, pp. A380; *id.* at 17:25 ("So what would you like to do?"); Appx. Vol. II, pp. A386; *id.* at 23:14 ("How would you like to proceed?").  Thus, the Appellants had "won the battle of the scheduling."  (Appx. Vol. II, pp. A379; *id.* at 16:7-8).

After counsel for PMNI stressed the importance of resolving the issue prior to the scheduled Closing under the Plan, Appellants consented to an August 30, 2010 hearing date – a mere one day before the scheduled Closing.  (Appx. Vol. II, pp. A388-89; *id.* at 25-26).  At no time did Appellants suggest to the Bankruptcy Court that they would be unprepared to proceed with the August 30 hearing.

### E.    Appellants' "Republication" Argument

On August 30, 2010, Appellants filed a Memorandum of Law in Opposition

to the Debtors' Objection (the "Opposition Brief").  (Appx. Vol. II, pp. A348; BDE

#2502).  The Opposition Brief was focused on an article published in April 2010

(the "Kinney Article") which contained a hyperlink to the Web Page.  The Kinney

Article, which was not referenced in either the State Court Action or in the

Appellants' August 2, 2010 Request, does not refer to or identify any of the

Appellants in this action.  Nevertheless, in a last-ditch attempt to preserve an

administrative expense claim, the Appellants argued that the Kinney Article

constituted a "republication" of the allegedly defamatory materials in the

December 2008 articles because it included a link to the Web Page which

contained those Articles.  (Appx. Vol. II, pp. A353; *id.* at 6).  Appellants did not

cite any authority in support of that "hyperlinking" theory.

### F.    Hearing on the Administrative Expense Request

At the hearing held on August 30, 2010 (the "August 30 Hearing"), the

Debtors presented the Court with authority showing that such hyperlinking

arguments have been soundly rejected by courts.  (Appx. Vol. II, pp. A418; BDE

#2532 at 26:1-14).  The Debtors also allowed counsel for Appellants to examine

the Editor of the Web Page, who offered testimony regarding the history of the

Web Page, and the software used by the Debtors to "keep a record of every

publication of every part of a web page."  (Appx. Vol. II, pp. A404; *id.* at 12:23)

(noting that the software separately tracked "all of the components on the page and the articles that are within the components")).  The uncontroverted evidence presented at the hearing established, once again, that (i) each of the Articles was published in December 2008, and that (ii) no change (whether substantive or otherwise) was made to either the Articles or to the Web Page which contained them (including its layout) after the Petition Date.  (Appx. Vol. II, pp. A409; *id.* at 17:13-14).  The parties did not dispute that the Kinney Article was published after the Petition Date, nor that the Kinney Article did not reference any of the Appellants in this action.  (Appx. Vol. II, pp. A416; *id.* at 24:7-13).  Appellants also did not argue that the Kinney Article, by itself, was defamatory.  Instead, they continued to maintain that by linking to the Web Page which included the archived Articles, the Kinney Article constituted a republication of those Articles.  (Appx. Vol. II, pp. A418; *id.* at 26:15-18).

### G.    The Bankruptcy Court's Ruling

The Bankruptcy Court rejected Appellants' argument, noting that it was entirely unsupported and that, even if the evidence had not unequivocally established that there were no post-petition changes to the Web Page or Articles and no post-petition article which mentioned or identified the Appellants, Appellants' argument was "at the frontier of anything that could conceivably qualify for administrative expense treatment."  (Appx. Vol. II, pp. A421; *id.* at 29:4-5).  Thus, the Court held that Appellants had not satisfied their burden of

proof of establishing entitlement to administrative expense priority for their claims. (Appx. Vol. II, pp. A420; *id.* at 28:14-17).

### H.    Appeal to the District Court

On appeal to the District court, Appellants argued that the Bankruptcy Court abused its discretion in refusing to allow their Administrative Claim Request. (Appx. Vol. II, pp. A17; DDE 3).  Appellants also argued that the Bankruptcy Court abused its discretion by improperly prejudging the merits of their claim, and violated their "due process" rights by scheduling an expedited hearing on the issue, even though the Bankruptcy Court scheduled that hearing only after Appellants consented to the hearing date, and even though Appellants never objected to that hearing date before the Bankruptcy Court.  (*Id.*).  As explained in more detail below, the district court soundly rejected each of these arguments, and also correctly found that the appeal was equitably moot.  (Appx. Vol. I, p. A4).

### STANDARD OF REVIEW

The Bankruptcy Court's determinations regarding whether to allow an administrative expense claim are reviewed for abuse of discretion.  *See, e.g.*, *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir. 1988) ("Although a claim may meet the implicit requirement of section 503(b)(1)(A), namely that any claims under the section must have a distinct postpetition character, bankruptcy courts have broad discretion in determining whether to award administrative expense priority.") (citing In re *Baldwin-United Corp.*, 43 B.R. 443, 453 (S.D. Ohio 1984);

10

*In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8 (2d Cir. 1989) (same); *In re Chester Cty. Plastics, Inc.*, 174 B.R. 41, 44 (E.D. Pa. 1994) ("A bankruptcy court has a great deal of discretion in determining whether to allow an administrative claim."). The Bankruptcy Court's decision to schedule an expedited hearing is also reviewed for abuse of discretion. *See*, *e.g.*, *In re Tobacco Road Assocs., LP*, No. Civ. 06-2637, 2007 WL 966507, at *11-12 (E.D. Pa. Mar. 30, 2007) ("A bankruptcy judge's decision to set an expedited schedule and/or deny a motion to continue that schedule must. . . be reviewed for abuse of discretion."). This Court reviews the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review. *See*, *e.g.*, *In re Bryen*, --- F. App'x ----, No. 11-1616, 2011 WL 5248233, at *3 (3d Cir. Nov 4, 2011).

A District Court's decision regarding whether an appeal is equitably moot is also reviewed for abuse of discretion. *SemCrude L.P. v. Manchester Secs. Corp.*, 2012 WL 8597, at *2 (3d Cir. Jan. 3, 2012) ("Because application of equitable mootness involves a discretionary balancing of equitable and prudential factors, we review its application for abuse of discretion."); *In re Cont'l Airlines*, 91 F.3d 553, 567 (3d Cir. 1996) ("[T]he key issue really is whether the district court abused its discretion in weighing the various equitable factors."). Due process claims are reviewed under a *de novo* standard of review. *Singh v. Att'y Gen. of U.S.* 385 F. App'x 184, 186, 2010 WL 2616865, at *1 (3d. Cir. July 1, 2010).

In applying the abuse of discretion standard, the Bankruptcy Court's exercise of its broad discretion should be "disturbed only in the rarest cases" – specifically, where that discretion is "abused." *See, e.g., In re Reading Broad.*, No. 08-1775, 2008 WL 3540212, at *4 n.9 (E.D. Pa. Aug. 8, 2008). The abuse of discretion standard is an exacting one. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record, discretion is abused." *Parents United For Better Sch., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 148 F.3d 260, 274 (3d Cir. 1998) (citations omitted). A lower court's discretion "will be found to have been abused when the judicial action is arbitrary, fanciful or unreasonable which is another way of saying that discretion is abused only where no reasonable man would take the view" adopted by that court. *Reading Broad.*, 2008 WL 3540212, at *4 n.9 (citing *In re Blackwell*, 162 B.R. 117, 119 (E.D. Pa. 1993)).

## SUMMARY OF ARGUMENT

The Bankruptcy Court acted well within its discretion in denying Appellants' administrative expense claims because Appellants did not and cannot identify any valid post-petition tort which could give rise to such a claim. The Bankruptcy Court also acted well within its discretion in expressing its preliminary views on the merits of Appellants' administrative requests claims at a preliminary hearing,

12

and in scheduling an expedited hearing on the issue prior to a scheduled closing under the Debtor's plan of reorganization.  The Bankruptcy Court's decision to schedule an expedited hearing did not violate Appellants' due process rights, among other reasons because Appellants consented to the hearing date.  Finally, the District Court was well within its discretion in finding that this appeal is equitably moot, given that the Debtors' plan or reorganization has long been substantially consummated.  Accordingly, the well-reasoned opinions of the Bankruptcy Court and District Court should be affirmed.

## **ARGUMENT**

### A.    **The District Court Did Not Abuse its Discretion in Holding that the Appeal is Equitably Moot.**

***Standard of Review:  This issue is reviewed for abuse of discretion.***[4]

Equitable mootness is a "widely recognized and accepted doctrine" under which courts have held that "an appeal should… be dismissed as moot when, even

---

[4] Appellants state that this issue "is reviewed *de novo*."  (Appellants' Br. at 40).  They are incorrect.  As this Court has repeatedly held, "[b]ecause application of equitable mootness involves a discretionary balancing of equitable and prudential factors, we review its application for abuse of discretion."  *SemCrude L.P. v. Manchester Securities Corp.*, No. 11-1724, 2012 WL 8597, at *2 (3d Cir. Jan. 3, 2012); *see also*, *e.g.*, *In re Zenith Electronics Corp.*, 329 F.3d 338, 343 (3d Cir. 2003) ("Because the District Court's application of the equitable mootness doctrine 'involves a discretionary balancing of equitable and prudential factors rather than the limits of the federal courts' authority under Article III,' we review that decision for abuse of discretion."); *In re Cont'l Airlines*, 91 F.3d 553, 567 (3d Cir. 1996) ("[T]he key issue really is whether the district court abused its discretion in weighing the various equitable factors.").

13

though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Cont'l Airlines*, 91 F.3d 553, 558-59 (3d Cir. 1996) (appeal seeking to preserve administrative priority status of certain claims was equitably moot where plan had been substantially consummated); *see also*, *e.g.*, *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185-86 (3d Cir. 2001).  The doctrine of equitable mootness is "distinct from, and broader than, Constitutional mootness," and may be used to dismiss an appeal even if the court can fashion "meaningful relief, " as long as a change in circumstances has rendered such relief inequitable.  *In re Reading Broad., Inc.*, 2008 WL 3540212, at *3 & n.5.

Factors that have been considered by courts in determining whether it would be equitable or prudential to reach the merits of a bankruptcy appeal include (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.  However, in this Circuit, substantial consummation is consistently cited as the most important factor in determining whether an appeal is equitably moot.  *In re SGPA, Inc.*, 34 F. App'x 49, 51-52 (3d Cir. 2002) (The "factors are given varying weight, depending on the particular circumstances, but the foremost consideration is whether the reorganization plan has been substantially consummated.") (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir.

2000)); *see also In re Cont'l Airlines*, 91 F.3d 553 (3d Cir. 1996) (same).  Courts in

this Circuit also frequently use the doctrine to dismiss bankruptcy appeals where

"Appellants have failed and neglected diligently to pursue their available remedies

to obtain a stay of the objectionable orders of the Bankruptcy Court," and have

thereby allowed a change in circumstances to occur which renders it inequitable

for the court to consider the merits of the appeal.  *In re Cont'l Airlines*, 91 F.3d at

562 (noting that "in many of the cases in which bankruptcy appeals were dismissed

as moot, the appellants failed to seek a stay") (citations and quotations omitted).

Indeed, "[i]t 'is obligatory upon appellant. . . to pursue with diligence all available

remedies to obtain a stay of execution of the objectionable order (even to the extent

of applying to the Circuit Justice for relief … if the failure to do so creates a

situation rendering it inequitable to reverse the orders appealed from.'"  *In re*

*Reading Broad.*, 2008 WL 3540212, at *4 (quoting *In re Highway Truck Drivers &*

*Helpers Local Union No. 107*, 888 F.2d 293, 297 (3d Cir. 1989)); *see also, e.g.*, *In*

*re Genesis Health Ventures, Inc.*, 204 F. App'x 144, 146 (3d Cir. 2006) ("[I]t is

incumbent on the appealing parties to obtain a stay where there is a 'clear

possibility' that their claims would become moot.") (citations omitted); *In re Cont'l*

*Airlines*, 91 F.3d at 562 ("there is a procedure under Bankruptcy Rule 8005 to seek

to preserve the status quo and '[t]he party who appeals without seeking to avail

himself of that protection does so at his own risk.') (citations omitted).

Here, there is no dispute that the Plan was substantially consummated after the Bankruptcy Court's Order, and that Appellants did not attempt to seek any stay of that Order.  Appellants also did not seek expedited consideration of the present appeal, and in fact have not pursued their spurious claims arising out of the Kinney Article in any venue, including in the State Court Action, even though they have been free to litigate any post-petition tort claims in that action.  There can also be no dispute that the resolution of the Appellants' administrative expense request before the Closing was of great consequence to both the Debtors and PMNI. Under the asset purchase agreement pursuant to which PMNI acquired substantially all of the Debtors' assets, PMNI also assumed financial responsibility for all allowed administrative claims.  Accordingly, it was critical to both PMNI and the Debtors that before the closing date of the transaction (which was co-terminus with the effective date of the Plan), all significant administrative claims be resolved.  Indeed, numerous administrative claims were heard on an expedited basis prior to the closing date precisely because resolution of those claims had the potential to alter the economic bargain struck by the Debtors and PMNI and embodied in the Plan that is now effective and cannot be undone.  PMNI therefore insisted that the hearing on the merits of the Request be scheduled in advance of the Closing, so that there could be a resolution of this issue before consummation of the Plan.  (Appx. Vol. II, pp. A387-88; BDE #2532 at 24:20-25:9).  Ultimately, PMNI closed the transaction in reliance on the fact that Appellants' claim had not

16

been allowed or stayed.  *C.f. In re Cont'l Airlines*, 91 F.3d at 565 ("Our inquiry

should not be about the 'reasonableness' of the Investors' reliance or the

probability of either party succeeding on appeal.  The strong public policy in favor

of maximizing debtors' estates and facilitating successful reorganization, reflected

in the Code itself, clearly weighs in favor of encouraging such reliance.  Indeed,

the importance of allowing approved reorganizations to go forward in reliance on

bankruptcy court confirmation orders may be the central animating force behind

the equitable mootness doctrine.").  To allow this appeal to proceed would

discourage such reliance and be inconsistent with the strong public policy of

affording finality to bankruptcy court orders.

    In light of these facts, the District Court correctly found that the appeal was

equitably moot.  (Appx. Vol. I, p. A5).  This was far from an abuse of discretion.

### B.    The District Court Correctly Held that the Bankruptcy Court Did Not Abuse its Discretion by Denying Debtors' Administrative Claim Request.

***Standard of Review:  The Bankruptcy Court's determinations regarding whether to allow an administrative expense claim are reviewed for abuse of discretion.  This Court reviews the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review.***

    Pursuant to the plain text of section 503(b) and Third Circuit precedent, "all

administrative expenses" allowed by the Court *must* be "actual, necessary costs

and expenses of preserving the estate."  *In re Reliant Energy Channelview LP*,  594

F.3d 200, 206 (3d Cir.  2010); *see also Pa. Dep't of Envt'l Res. v. Tri-State Clinical*

*Labs., Inc*., 178 F.3d 685, 689 (3d Cir. 1999) (an administrative claim "must be (1) a 'cost' or 'expense' that is (2) 'actual' and 'necessary' to (3) 'preserving the estate'" in order to meet the rubric of section 503(b)(1)(A)).  The party seeking payment of its costs and fees as an administrative expense bears the burden of showing that these requirements are met.  *In re O'Brien Envt'l Energy, Inc*., 181 F.3d 527, 533 (3d Cir. 1999) ("A party seeking payment of costs and fees as an administrative expense must ... carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an *actual benefit to the estate* and that such costs and expenses were *necessary* to preserve the value of the estate assets.") (citation omitted) (emphasis added).  Even if this burden has been met, a Bankruptcy Court may still refuse to allow an administrative expense claim in its discretion.  *See*, *e.g.*, *In re Dant & Russell, Inc*., 853 F.2d 700, 707 (9th Cir. 1988) ("Although a claim may meet the implicit requirement of section 503(b)(1)(A), namely that any claims under the section must have a distinct postpetition character, bankruptcy courts have broad discretion in determining whether to award administrative expense priority."); *In re Aspen Limousine Serv., Inc*., 193 B.R. 325, 338-39 (D. Colo. 1996) (court did not abuse its discretion in refusing to consider administrative claim which was filed shortly before confirmation hearing).

In certain cases, damages arising out of post-petition torts committed by the Debtors may be treated as actual and necessary costs of the estate to the extent

"fundamental fairness" so requires, and to the extent the costs are related to the preservation of the estate. *Reading Co. v. Brown*, 391 U.S. 471, 477 (1968). This fundamental fairness analysis requires a Bankruptcy Court to exercise its discretion by considering issues of "fairness and practicality" and by balancing the interests of innocent creditors against the interests of victims who have shown they were injured post-petition at the hands of the Debtors. *Id.* at 477 (noting the statutory objective of "fairness to all persons having claims against an insolvent."). In balancing these interests, the Bankruptcy Court must give due regard to the Code's "overriding concern" of preserving as much of the estate as possible for creditors. *See Otte v. United States*, 419 U.S. 43, 53 (1974) ("There is, of course, an overriding concern in the Act with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.").

Thus, the interests of these creditors may not be subordinated to the interests of potential tort claimants whose claims are speculative or frivolous. *See, e.g.*, *In re Aspen Limousine Serv., Inc.*, 193 B.R. 325, 337 (D. Colo. 1996) ("Unlike the fire-related damages in *Reading*, which were fixed and directly related to the receiver's negligence in preserving the property of the estate during the railroad's reorganization period, the $3.2 million in antitrust damages sought by CME is speculative as to amount and unrelated to the preservation of the estate."); *see also In re Trans World Airlines, Inc.*, 182 B.R. 102, 107-08 (D. Del. 1995), *aff'd in part, rev'd in part on other grounds*, 96 F.3d 687 (3d Cir. 1996) (damages alleged in

19

connection with defamation counterclaim against debtor, which was based in part on alleged statements made after the petition date, was not the type of "administrative expense" contemplated to be covered by 11 USCA § 503(b); thus, no notice of bar date for filing of claims for administrative expenses is due claimants.).

Here, the District Court properly held that the Bankruptcy Court was within its discretion in denying Appellants' Request because Appellants never came close to satisfying their burden of showing that they have suffered damages as a result of any post-petition tort at the hands of the Debtors.  (Appx. Vol. I, p. A7).  First, the Debtors did not attempt to argue (and do not now credibly claim) that the "Kinney Article" itself has defamed them, nor could they because that article does not mention or identify any of them.  *See*, *e.g.*, *Iafrate v. Hadest*, 621 A.2d 1005, 1006 (Pa. Super. Ct. 1993) ("To establish a cause of action for defamation, the plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) *a reference to the plaintiff*; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege.") (emphasis added); *Smith v. Wagner*, 588 A.2d 1308, 1311 (Pa. Super. Ct. 1991) (same).  Instead, it relates to other charter schools which are not parties to this dispute.  (*See* Appx. Vol. II, pp. A417; Transcript 8/30/10 Hearing, BDE #70 at 25:10-17) (the Kinney Article "discussed city Charter

20

Schools, it didn't discuss Charter Schools such as CSMI which is a suburban Charter School.").

In addition, the Appellants' argument that the Kinney Article nevertheless results in a post-petition tort claim simply because it includes a link to the Web Site which contains the two pre-petition Articles not only defies logic, but has been rejected by every court to consider the issue. *See*, *e.g.*, *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 918 (W.D. Ky. 2009) (rejecting similar hyperlinking theory and noting that the "Court believes that finding republication by hyperlink would undermine the purposes of applying the single publication rule to the internet .... Websites are frequently, if not constantly, updated. Methods of access to portions of the website can change on a regular basis and links to previous posts on a website are constantly added and taken away from sites. Therefore, to find that a new link to an unchanged article posted long ago on a website republishes that article would result in a continual retriggering of the limitations period."); *Sundance Image Tech., Inc. v. Cone Eds. Press, Ltd.*, No. 02 CV 2258, 2007 WL 935703, at *7 (S.D. Cal. Mar. 7, 2007) (rejecting argument that internet link to allegedly defamatory website constitutes a republication of such allegedly defamatory material); *Id.* ("Plaintiff cites no authority holding that providing links to statements already published on the Web, without more, republishes those statements."); *Churchill v. State of N.J.*, 876 A.2d 311, 315 (N.J. Super. Ct. 2005) (press release posted on web site which linked to allegedly defamatory internet

report and "invited visitors to the site" did not result in a republication of any

defamatory material because the press release merely "altered the means by which

website visitors could access the report, but they in no way altered the substance or

form of the report.").[5]  As stated by the District Court, "Appellees, after all, merely

posted a link to the charter school webpage that contained the original articles; this,

as the courts that have had occasion to consider this issue have uniformly held, is

not distinct tortious conduct upon which a defamation claim can be grounded."

(Appx. Vol. I, p. A7).

In short, the Appellants presented the Bankruptcy Court and District Court

with no authority whatsoever to support their baseless argument that the Kinney

Article resulted in a post-petition republication of the 2008 Articles or that it was

otherwise defamatory in any way.  The Bankruptcy Court was therefore well

within its discretion in holding that Appellants failed to satisfy their heavy burden

---

[5] Appellants do not attempt to argue that the single publication rule does not apply to Internet publications, nor could they in light of the virtually unanimous judicial consensus on the issue.  *See*, *e.g.*, *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89-90 (2d Cir. 2003); *Lane v. Strang Commc'ns Co.*, 297 F. Supp. 2d 897, 899-900 (N.D. Miss. 2003); *Mitan v. Davis*, 243 F. Supp. 2d 719, 721-724 (W.D. Ky. 2003); *Simon v. Ariz. Bd. Of Regents*, 28 Media L. Rep. (BNA) 1240, 1245-1246 (Ariz. Super. Ct. 1999); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 13 Cal. Rptr. 3d 353, 355, 358-63 (App. 4th 2004); *McCandliss v. Cox Enters., Inc.*, 593 S.E.2d 856, 858 (Ga. App. 2004); *Abate v. Me. Antique Digest*, No. 03-3759, 2004 WL 293903, *1-2 (Mass. Super. Ct. Jan. 26, 2004); *E.B. v. Liberation Publs., Inc.*, 7 A.D.3d 566 (N.Y. 2004).  *Cf. Oja v. Fink*, No. Civ. 02-6301, 2003 WL 23996035, at *4-5 (D. Or. Feb. 26, 2003) *aff'd* 440 F.3d 1122 (9th Cir. 2006).

under Section 503(b), and the District Court properly affirmed the Bankruptcy

Court's order. [6]

> **C.    The District Court Correctly Held that the Bankruptcy Court Did Not Err in Scheduling the August 30 Hearing or in Expressing its Preliminary View before the August 30 Hearing.**

*Standard of Review:  The Bankruptcy Court's decision to schedule an expedited hearing is also reviewed for abuse of discretion.  This Court reviews the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review.  The District Court's holding regarding Appellants' due process claim is reviewed de novo.*

Although the Appellants argue on appeal that the Bankruptcy Court violated

their due process rights or abused its discretion by scheduling a hearing on the

Objection for August 30, 2010, the Appellants never made this argument at any

time prior to or during that hearing.  To the contrary, the Appellants *consented* to

that hearing date.  (Appx. Vol. II, pp. A388-89; BDE #2532 at 25:10-26:14).

---

[6] In their administrative claim request, Appellants also stated that $147,000.00 in legal costs related to certain adversary proceedings seeking to stay the prosecution of the State Court Action should be given administrative expense priority, but Appellants subsequently abandoned this claim.  Appellants' spurious claims regarding these legal costs were thoroughly debunked in the Debtors' Objection, and Appellants did not thereafter attempt to argue that these costs may be treated as an administrative expense of the estate under any theory (in either their Opposition, during the August 26 Hearing, or during the August 30 Hearing).  (*See* Appx. Vol. II, pp. A154-57*;* BDE #2466 at 19-22).  Appellants also do not present any argument regarding these costs in this appeal.  This issue has therefore been waived.  *See Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202 -03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation omitted); *In re Stingfree Techs. Co.*, 427 B.R. 337, 356 (E.D. Pa. 2010) ("[C]laims not raised and argued in a moving party's brief are abandoned and waived."); Fed. R. Bankr. P. 8010(a)(1)(E)).

Appellants' due process argument should be rejected on that basis alone.  *See In re*

*SK Foods, L.P.*, No. Civ. S-10-810, 2010 WL 5136187, at \*7 -8 (E.D. Cal. Dec. 10,

2010) (rejecting due process argument which was not asserted before the

bankruptcy court).

In any event, even if Appellants hadn't consented to the August 30, 2010

hearing date, Appellants' argument that the Bankruptcy Court's scheduling

decision violated Appellants' due process rights is meritless.  Due process merely

requires that a court afford parties "notice" and an "opportunity to be heard."  *See*,

*e.g.*, *Carroll v. Astrue*, No. 09-4149, 2010 WL 4121160, at \*2 (3d Cir.  Oct. 21,

2010).  Thus, courts have repeatedly held that due process rights are not violated

by the scheduling of expedited hearings in bankruptcy proceedings as long as

parties in interest receive actual notice "in advance of" the hearing, even if the

notice is received as late as the day of the hearing.  *E.g.*, *In re George*, 4 F. App'x

357, 361 (9th Cir. 2001) (due process not violated where party received notice of

hearing four hours prior to expedited hearing and was able to appear at the

hearing);  *Rodriguez v. EMC Mortgage Corp. (In re Rodriguez)*, No. 00-50657, 252

F.2d 435. 2001 WL 360713 at \*3 (5th Cir. Mar. 15, 2001) ("[W]e reject

Rodriguez's allegation that the bankruptcy court denied him due process by

holding the expedited hearing without giving him notice'" because "[t]he record

shows that notice was delivered overnight to Rodriguez via the United States

Postal Service in advance of the expedited hearing."); *In re Lehman Bros.*

*Holdings, Inc.*, 415 B.R. 77, 85 (S.D.N.Y. 2009) (expedited hearing scheduled two

days after notices were served did not violate due process); *see also In re Johns-*

*Manville Corp.*, 600 F.3d 135, 147-148 (2d Cir. 2010) (argument that bankruptcy

court's expedited consideration of settlement failed to meet due process was

"meritless" where parties were provided with a notice and hearing); *Advantage*

*Healthplan, Inc. v. Potter*, 391 B.R. 521, 551-552 (D.D.C. 2008), *aff'd,* 586 F.3d 1

(D.C. Cir. 2009) (rejecting argument that expedited hearing violated due process

because "even if the Bankruptcy Court had lacked good cause to reduce the notice

period, the record before this Court makes clear that Advantage had actual notice

of the December 21 hearing, the deadline by which it was required to object .... As

such, Advantage did not suffer a due process violation because "[n]otice is

adequate when although a party did not receive formal notice, actual notice was

received.") (citations omitted); *In re Horizon Natural Res. Co.*, 162 F. App'x 393,

394 (6th Cir. 2005) (rejecting argument that appellant's due process rights were

violated when the bankruptcy court held the expedited hearing without allowing

[it] sufficient time for discovery).  As found by the District Court, "expedited

hearings are commonplace and often necessary in the bankruptcy context."  (Appx.

Vol. I, p. A6).  In this case, it is undisputed that Appellants were sent and received

actual notice of the Opposition a full week before the hearing on the Opposition.

Appellants were even given a generous opportunity to be heard on the Motion to

Expedite, which was not required by the either the Local Rules or any applicable

law.  And at the hearing on the Motion to Expedite, Appellants were asked to

propose a schedule that would work for them, and ultimately consented to the

August 30 hearing date without objection.  (Appx. Vol. II, pp. A386-89; BDE

#2532 at 23:14-26:13).  In light of these facts, the District Court properly rejected

Appellants' due process argument.

Appellants' argument that the Bankruptcy Court abused its discretion by

scheduling the expedited hearing is meritless for many of the same reasons.  Under

Fed. R. Bankr. P. 9006(c) and Local Bankruptcy Rule 5070-1, "a moving party

who desires a hearing date earlier than that which would normally be assigned may

move for expedited consideration of its substantive motion, and the Court may set

an expedited schedule without a hearing under Local Bankruptcy Rule 9014-2."

*In re Tobacco Road Assocs., LP*, No. Civ. 06-cv-2637, 2007 WL 966507, at *11-12

(E.D. Pa. March 30, 2007).  "The decision to grant or deny a motion for expedited

consideration is within the Court's discretion; it is to be made based on the motion

and may be made without an answer or, as mentioned above, a hearing."  *Id.* at

*12.  A bankruptcy judge's decision to set an expedited schedule "must, therefore,

be reviewed for abuse of discretion."  *Id.* (finding that scheduling an expedited

hearing without a hearing on the scheduling motion was "wholly appropriate under

Local Bankruptcy Rule 5070-1(f)").  Nothing in the record suggests that the

Bankruptcy Court's decision to set the hearing for August 30 was anything but

reasonable.  Despite the obvious urgency of reaching a resolution of that issue

before the Closing scheduled for August 31, 2010, the Bankruptcy Court repeatedly asked the Appellants to make a proposal regarding what they thought would be a reasonable schedule, and ultimately scheduled the August 30 hearing only *after* Appellants' counsel consented to it. (Appx. Vol. II, pp. A386-89; BDE #2532 at 23:14-26:13). Thus, the Appellants had "won the battle of the scheduling." (Appx. Vol. II, p. A379; *Id.* at 16:3-8). This scheduling decision was not an abuse of discretion.

Finally, the Appellants' argument that the Bankruptcy Court improperly "prejudged" the merits of dispute during the August 26 Hearing is baseless. Indeed, at the August 26 Hearing, the Bankruptcy Court repeatedly stated that its views were preliminary, and told Appellants it would allow a hearing "for purposes of attempting to, you know, persuade me to change my mind based on my preliminary take of what this is about." (Appx. Vol. II, pp. A386; BDE #2532 at 23:20-23). The Bankruptcy Court then allowed *a full evidentiary hearing* to proceed on the issue on August 30. At that evidentiary hearing, the Bankruptcy Court afforded Appellants a full opportunity to present their case. As described above, Appellants failed to present a single piece of evidence suggesting that there was a post-petition republication of the Articles or Web Site, or any legal support for their spurious argument that a post-petition hyperlink to the Web Site could constitute a republication of the allegedly defamatory material. Indeed, as found by the District Court, the Bankruptcy Court "did not in fact prejudge Appellants'

27

claim at all" and simply appraised Appellants "of the court's preliminary

impression," which "is an often used judicial technique which narrows the issues."

(Appx. Vol. I, p. A6).  Thus, the District Court properly held that the Bankruptcy

Court did not abuse its discretion by expressing its preliminary views at the August

26 Hearing.

## <u>CONCLUSION</u>

Based on the foregoing, this Court should dismiss the Appeal of the Order

or, in the alternative, affirm the Order and grant such other relief as is just, proper,

and equitable.


Dated:  February 6, 2012          Respectfully submitted,

                                /s/  David F. Abernethy
                               Andrew C. Kassner (PA Bar # 43567)
                               Andrew J. Flame (PA Bar # 69673)
                               David F. Abernethy (PA Bar # 36666)
                               DRINKER BIDDLE & REATH LLP
                               One Logan Square
                               Suite 2000
                               Philadelphia, PA 19103-6996
                               Telephone: (215) 988-2700
                               Facsimile: (215) 988-2757
                               Email: andrew.kassner@dbr.com
                               Email: andrew.flame@dbr.com

                               Abid Qureshi
                               Sunish Gulati
                               AKIN GUMP STRAUSS HAUER & FELD LLP
                               One Bryant Park
                               New York, NY 10036
                               Telephone:  (212) 872-1000
                               Facsimile:   (212) 872-1002

                               *Attorneys for Appellee Philadelphia Media*
                               *Network, Inc.*

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of The United States Court of

Appeals for the Third Circuit.

>    /s David F. Abernethy           
> David F. Abernethy
> DRINKER BIDDLE & REATH LLP
> One Logan Square
> 18th & Cherry Streets
> Philadelphia, Pennsylvania 19103
> (215) 988-2700
>
> Attorney for Appellee Philadelphia Media
> Network, Inc.

Dated: February 6, 2012

## CERTIFICATE PURSUANT TO LAR 31.1

I hereby certify that the text of the electronic brief filed by Appellant

Citizens Bank of Pennsylvania is identical to the paper copies to be filed.  I further

certify that a virus protection program, Symantic Endpoint Protection, was run on

the electronic brief and that no virus was detected.

   s/ David F. Abernethy
David F. Abernethy

Attorney for Appellee Philadelphia
Media Network, Inc.

Dated:  February 6, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below I caused a copy of the

foregoing Brief of Appellee to be served by electronic filing of the Brief through

the CM/ECF system of this Court, and by sending two copies of that Brief by

United States first-class mail, postage prepaid, addressed to counsel as follows:

> Edmond M. George, Esquire
> D. Alexander Barnes, Esquire
> OBERMAYER REBMANN MAXWELL & HIPPEL LLP
> One Penn Center, 19th Floor
> 1617 John F. Kennedy Blvd.
> Philadelphia PA 19103-1895
>
> Lawrence G. McMichael, Esquire
> Anne M. Aaronson, Esquire
> Laura E. Vendzules, Esquire
> DILWORTH PAXSON LLP
> 1500 Market Street, Suite 3500E
> Philadelphia PA 19102

>   s/ David F. Abernethy
> David F. Abernethy
>
> Attorney for Appellee Philadelphia
> Media Network, Inc.

Dated:  February 6, 2012