No. 11-3257
_____

In the
**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**
_____

**VAHAN H. GUREGHIAN, DANIELLE GUREGHIAN, and CHARTER
SCHOOL MANAGEMENT, INC.,**

*Appellants,*

v.

**PHILADELPHIA NEWSPAPERS, LLC, *et al.*,**

*Appellee.*
_____

On Appeal from the Order of the United States District Court for the Eastern
District of Pennsylvania dated July 19, 2011, and docketed July 20, 2011, in
Civil Action Number 10-7098
_____

**REPLY BRIEF OF APPELLANTS**
_____

Edmond M. George, Esquire
D. Alexander Barnes, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
Telephone: (215) 665-3100
Facsimile: (215) 665-3165

Dated: February 21, 2012        *Counsel for Appellants*

# **TABLE OF CONTENTS**

**PAGE**

I.    ARGUMENT.................................................................................................2

    A.    The District Court Abused its Discretion in Holding that
the Appeal is Equitably Moot................................................................2

        1.    The District Court failed to consider and balance all
five factors of the equitable mootness test...................................3

        2.    The District Court failed to determine that the
Appeal, if successful, would unravel the
substantially-consummated Plan................................................3

        3.    Appellants were not required to seek a stay in
connection with the Appeal. .......................................................7

    B.    Contrary to the Assertions of Appellee, the District Court
Erred in Affirming the Bankruptcy Court's Denial of the
CSMI Parties' Administrative Expense Request...................................8

        1.    De novo, rather than an abuse of discretion, standard
of review applies to the denial of the of the
Administrative Expense Request ...............................................9

        2.    Appellee misconstrues the arguments of the
CSMI Parties ...........................................................................10

    C.    The District Court Erred in Concluding that the Bankruptcy
Court did not make Improper Conclusions at the August 26
Hearing on the Debtors' Motion for Expedited Hearing
and by Scheduling the August 30 Hearing on the
Merits on an Expedited Basis.............................................................16

II.    CONCLUSION.........................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE**

Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 552 (D.D.C. 2008) ...............20

Anthony v. Interform Corp., 96 F.3d 692, 697 (3d Cir. 1996)................................18

Aspen Limousine Serv., Inc., 193 B.R. 325, 338-39 (D. Col 1996) .......................15

Brooks v. United States, 127 F.3d 1192, 1195 (9th Cir. 1997) ...............................19

In re American Classic Voyages, Co., 298 B.R. 222 (D. Del. 2003) ......................22

In re Centric Corp., 901 F.2d 1514, 1517 (10th Cir. 1990) .....................................21

In re Continental Airlines, 91 F.3d 553, 560 (3d Cir. 1996) ................................2, 4

In re Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir. 1988)..........................14, 15

In re George, 4 F. App'x 357, 361 (9th Cir. 2001) ..................................................19

In re Horizon Natural Res. Co., 162 F.App'x 393, 394 (6th Cir. 2005) .................21

In re Johns-Manville Corp., 600 F.3d 135, 147-148 (2d Cir. 2010).......................20

In re Lehman Brothers Holdings, Inc., 415 B.R. 77, 85 (S.D.N.Y. 2009) .............20

In re Li, 249 B.R. 388, 390 (E.D. Pa. 2000) ..............................................................9

In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000) ...........................2, 4, 5

In re Zenith Electronics Corp., 329 F.3d 338, 346 (3d Cir. 2003) ...................4, 5, 7, 8

Lagenkamp v. Hackler (In re Republic Trust & Sav. Co.), 897 F.2d 1041,
1043 (10th Cir. 1990).................................................................................................22

Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.),
188 F.3d 116, 122 (3d Cir. 1999)................................................................................5

Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314 (1950) .........19

Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001) .........3

Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981).........10

## **STATUTES**

11 U.S.C. § 503 .........................................................................................1, 8, 14, 16

11 U.S.C. § 503(b)(1)(A) ...........................................................................................14

Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc. (collectively, the "Appellants" or "CSMI Parties"), submit the instant Reply Brief in support of its appeal of the Order of the United States District Court for the Eastern District of Pennsylvania dated July 19, 2011, (i) finding that the appeal of the August 30 Order of the Bankruptcy Court was equitably moot on the grounds that the Debtors' Plan was substantially consummated without being stayed; (ii) affirming the decision of the Bankruptcy Court that the Appellants failed to meet their burden for the allowance of administrative claims under 11 U.S.C. § 503; (iii) concluding that the Bankruptcy Court did not make improper premature conclusions at the August 26, 2010, hearing on the Debtors' Motion for Expedited Hearing on the underlying merit of the Appellants' Administrative Expense Request before a complete record could be presented to the Bankruptcy Court and before the Appellants had the opportunity to file a response in opposition to the Debtors' Claim Objection; and (iv) concluding that the Bankruptcy Court did not infringe the Appellants' due process rights in forcing the Appellants to participate in an expedited hearing on the Debtors' Objections to the Administrative Expense Requests with insufficient notice and opportunity to be heard.[1]

---

[1] Unless otherwise designated, all capitalized defined terms herein shall have the same definition as specified in the Opening Brief of Appellants.

4617543                                                   1

I. **ARGUMENT**

    A. **The District Court Abused its Discretion in Holding that the Appeal is Equitably Moot.**

Contrary to the assertion of the Appellee, the District Court abused its discretion in holding that the Appeal is equitably moot.  The District Court concluded, without further analysis, that the Appeal should be dismissed as equitably moot on the grounds that the Plan had been substantially consummated and no stay was sought. Citing, In re Continental Airlines, 91 F.3d 553, 560 (3d Cir. 1996). (District Court Order, Appx. Vol. I, p. A5; DDE #7 at p. 2) By focusing exclusively on the substantial consummation of the plan without a stay, the District Court ignored the other factors that are required for a determination of equitable mootness.[2]  These five factors "are given varying weight, depending on the particular circumstances" with the most important factor being whether the reorganization plan has been substantially consummated. In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

---

[2] The Third Circuit recognizes the following five factors to be evaluated to determine if an appeal from a bankruptcy case is equitably moot: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments. Continental, 91 F.3d at 560.

**1.    The District Court failed to consider and balance all five factors of the equitable mootness test.**

The failure of a district court to "analyze[] each of the of the factors of the equitable mootness test, appropriately balance[] these elements, and conclude[] that the doctrine should apply to Appellants' claims" results in an abuse of discretion.  Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 191 (3d Cir. 2001). Here, of the five factors of the equitable mootness test, the District Court below looked at just two, substantial consummation and whether a stay was obtained, and failed to engage in an analysis and balancing of the remaining factors.  Because it failed to consider and balance all five factors, the District Court abused its discretion in concluding that the Appeal was equitably moot.

**2.    The District Court failed to determine that the Appeal, if successful, would unravel the substantially-consummated Plan.**

In addition to the District Court's failure to consider and balance all five factors, the District Court abused its discretion in concluding that the substantial consummation without a stay, alone, supports a finding of equitable mootness. (District Court Order, Appx. Vol. I, p. A5; DDE #7 at p. 2) [3]  However, in reversing

---

[3] The District Court Order reads in relevant part, "Appellees contend the Court should dismiss Appellants' appeal as equitably moot. While the Court agrees with Appellees inasmuch as the plan has been substantially consummated and no stay was sought, see In re Cont'l Airlines, 91 F.3d 553, 560 (3d Cir. 1996), the Court nevertheless considers the merits of Appellants' contentions in the interests of completeness."

the finding of the District Court as an abuse of discretion, the Third Circuit Court of

Appeals has explained that "the first, and most important factor does not call merely

for a formalistic inquiry into whether the plan has been substantially consummated

under the Bankruptcy Code definition. Rather, the critical question under the first

factor is whether, if successful, the appeal might unravel the reorganization plan." In

re Zenith Electronics Corp., 329 F.3d 338, 346 (3d Cir. 2003)(emphasis added). The

equitable mootness doctrine is to be applied only to "prevent[] a court from

unscrambling complex bankruptcy reorganizations when the appealing party

should have acted before the plan became extremely difficult to retract." Zenith,

329 F.3d at 340, citing, Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180,

185 (3d Cir. 2001).  In Zenith, the Third Circuit concluded that the District Court

abused its discretion in making a determination of equitable mootness based, in

part, on the substantial consummation of the plan "even though a successful appeal

would have only a minor impact on and, at all events, could not result in the

unraveling of the plan." Zenith, 329 F.3d at 340. "To be sure, satisfaction of the

Bankruptcy Code definition [of substantial consummation] is a first step in applying

this factor, but it is not sufficient." Id. at 344 (emphasis added).  The Third Circuit, in

Zenith, noted that its previous decisions in Continental and PWS based its

determination of equitable mootness not on the mere fact that plan had been

substantially consummated in a definitional sense, but rather that the appeal, if

successful, would necessitate the unraveling of the plan of reorganization. Zenith, 329 F.3d at 344, quoting, In re Cont'l Airlines, 91 F.3d 553, 563 (3d Cir. 1996); In re PWS Holding, 228 F.3d 224, 236 (3d Cir. 2000); see also, Zenith, 329 F.3d at 340 (finding an abuse of discretion where equitable mootness was decided without a determinitaion that the appeal, if successful, would unravel plan).

The District Court here based its determination of equitable mootness solely on the fact that the Plan was substantially consummated and no stay was obtained. As detailed above, the Third Circuit requires the finding of substantial consummation to be accompanied by an analysis that the appeal, if successful, would unravel the reorganization plan.  That it did not stands as an abuse of discretion justifying reversal or remand.  "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts."  Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999).

While the Debtors' Plan has been consummated, the relief requested in the Appeal would not affect the success of the Plan.  PMNI assumed financial responsibility for allowed administrative claims under the Asset Purchase Agreement and the Plan. (Appellee Brief, Appx. Vol. II, p. A69; DDE #5 at p. 22) The amount of the Administrative Expense Request, in the estimated amount of $1,800,000 for the Debtors' post-petition acts of defamation, is insignificant in

comparison to the price paid under the Asset Purchase Agreement of more than

$105 million, and it cannot now be credibly claimed that the outcome of the

Administrative Expense Claim would have any material impact on the price paid

or the parties proceeding to Closing.[4]  (Claim Objection - Exhibit A, Appx. Vol. II,

pp. A161-95; BDE #2466-1 at pp. 1-35) Notably, Appellee does not argue that the

success of the Appeal would result in the unraveling of the Plan and the District

Court did not base its determination of equitable mootness on any such finding.

Appellee, however, contends that it was critical to both PMNI and the Debtors

to resolve disputed administrative expense requests before the scheduled August 31

Closing, and that numerous administrative expense claims were heard on an

expedited basis prior to the Closing because the resolution of the claims had the

potential to alter the "economic bargain struck by the Debtors and PMNI."

(Appellee Br. at p. 16) Be that as it may, Appellee makes no argument that the

success of the Appeal would cause an unraveling of the Debtors' Plan. Further, if it

truly was essential for the Appellee to have a fixed liability for allowed

administrative claims prior to the August 31 Closing, it should have insisted that

the Debtors formulate a process for the filing and adjudication of contested

administrative claims that would have resulted in the entry of final orders prior to

---

[4] In Zenith, the Trustee sought the disgorgement of $76,500 in professional fees which was tiny in the context of the reorganization of a company valued at $300 million and the appeal, if successful, would not cause reorganization plan to unravel. In re Zenith Electronics Corp., 329 F.3d 338, 346 (3d Cir. 2003).

the August 31 Closing.  The CSMI Parties expressed these very concerns in their

Limited Objection. (Limited Objection, Appx. Vol. II, pp. A110-12; BDE #2246 at

pp. 6-8) However, the Debtors, with the apparent consent of PMNI, obtained

approval of a deadline of August 2, 2010 for the filing of administrative claim

requests, a mere 29 days prior to the August 31 Closing, and then waited until the

night of August 23, 2010 to file the Claim Objection. As such, the Appellee was

responsible for the 11th-hour scheduling of the administrative claims allowance

process hard against the Closing and should not be the beneficiary of an estoppel

argument.

### 3.     Appellants were not required to seek a stay in connection with the Appeal.

Appellee devotes significant resources in its Opposition Brief arguing that

equitable mootness is justified because Appellants did not attempt to seek a stay of

the Bankruptcy Court's August 30 Order. (Appellee Br. at pp. 13-17)  Indeed, the

District Court based its decision of equitable mootness solely on the finding that

the plan was substantially consummated and a stay was not obtained. (District Court

Order, Appx. Vol. I, p. A5; DDE #7 at p. 2)  However, the Third Circuit has ruled

that the "stay" factor is not afforded much weight when the success of the appeal

would not necessitate the unraveling of the plan and that, under such

circumstances, there is little reason for the appellant to request the stay. Zenith, 329

F.3d at 346 n. 4. The "stay" factor is "largely duplicative of the 'substantial

confirmation' factor. . . ." in the sense that a plan cannot be substantially consummated if the appellant had obtained a stay and that the "stay" factor is designed to safeguard the same interests as the substantial consummation factor and should only weigh heavily against the appellant if, by a failure to obtain a stay, the plan is confirmed and the viability of which is threatened by the later appeal. Zenith, 329 F.3d at 346 n. 4, quoting, Nordoff Invs., Inc. v. Zenith Elecs. Corp. (In re Zenith Elecs. Corp.), 250 B.R. 207, 214 (D. Del. 2000).  However, as discussed, *supra*, the success of the Appeal would not threaten the viability of the Plan. Thus, the District Court abused its discretion in heavily weighing the "stay" factor in its finding of equitable mootness.

> **B.    Contrary to the Assertions of Appellee, the District Court Erred in Affirming the Bankruptcy Court's Denial of the CSMI Parties' Administrative Expense Request.**

The Bankruptcy and District Court erred in concluding that the Appellants failed to meet their burden for the allowance of administrative claims under 11 U.S.C. § 503.  The Administrative Expense Request was "actual and necessary to preserve the estate" and arose from a post-petition transaction with the Debtors. The Kinney Article, with its hyperlink to the Charter Page, itself disseminated false and misleading information attributable to the CSMI Parties, and the District Court erred in sustaining the finding of the Bankruptcy Court that the Kinney Article did not constitute a separate and distinct post-petition act of republication.

1.    ***De novo*, rather than an abuse of discretion, standard of review applies to the denial of the of the Administrative Expense Request.**

Appellee mistakenly contends that the review of the denial of the CSMI Parties' Administrative Expense Requests should be on an "abuse of discretion" standard rather than the *de novo* standard urged by Appellants. (Appellant Br. at p. 17) Appellee ignores how the issue was presented to the Bankruptcy Court. The central question before the Bankruptcy Court was whether or not the Single Publication Rule applied to the Kinney Article and whether the Kinney Article, in the context of the Charter Page and the Articles, amounted to a distinct act of post-petition defamation. As detailed in Appellants' Opening Brief, the Debtors conceded at the August 30 Hearing that the Kinney Article was linked to the Charter Page after the Petition Date in April 2010, and that "it's just whether or not legally that amounts to republication. . . "  and that "we agree that there was an article published on philly.com in April 2010 that linked to the web page at issue and I think that there's a legal question as to whether or not that's republication, and we maintain it is not." (Transcript of August 30 Hearing, Appx. Vol. II, p. A398:4-20)(emphasis added) Accordingly, the question of whether the Kinney Article constituted a separate act of republication was a conclusion of law which, on appeal, is reviewed *de novo*. In re Li, 249 B.R. 388, 390 (E.D. Pa. 2000), quoting, Fleet Consumer Discount Co. v. Graves (In re Graves), 156 B.R. 949, 954

(E.D. Pa. 1993) ("de novo" review requires the district court to make its own legal conclusions "without deferential regard to those made by the bankruptcy court"). On an appeal of a district court ruling on a bankruptcy court decision, the court of appeals reviews bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981).

**2.     Appellee misconstrues the arguments of the CSMI Parties.**

Appellee goes to great lengths to misconstrue and distort the arguments of the CSMI Parties in support of its Administrative Expense Request.

First, Appellee alleges that the CSMI Parties do not contend that the Kinney Article itself has defamed them because the article does not specifically mention any of them.  (Appellee Br. at p. 20) Further, Appellee claims that the Kinney Article relates only to other charter schools that are not parties to this dispute and discusses only city charter schools and not suburban schools such as CSMI. (Appellee Br. at pp. 20-1) This is a gross distortion of both the contents of the Kinney Article and the CSMI Parties' argument.   The Kinney Article was not limited to a disparagement of just city schools as it begins with the mocking musings of the author imagining her parents (who apparently worked in public schools) running a charter school in Pennsylvania and being able to "charg[e]

granite countertops to taxpayers," be "reimbursed for family trips to Disney" and to employ her as a consultant at $100,000 to read Dr. Seuss. (Administrative Expense Request Memorandum - Exhibit A, Appx. Vol. II, pp. A361-363; BDE #2502-1 at pp. 1-3) (Appellants Br. at pp. 19-20)  The Kinney Article lures the reader to view the Charter Page on "Philly.com" as a place where they will see "remarkable reporting" of "greedy grown-ups pilfering public gold." Id.  The first thing viewed on the Charter Page is the highlighted marquee featuring the false and misleading Articles about the CSMI Parties. Id.  Thus, the Kinney Article endorses the "remarkable reporting" contained in the Charter Page where the Articles prominently appear under the marquees banner and misleads the reader into believing that the CSMI Parties have engaged in wrongful or illegal conduct at the expense of the education of children.

The CSMI Parties argued that communications alleged to be defamatory must be viewed in context and that the nature of the audience seeing or hearing the remark is critical for determining whether the communication is defamatory. (Appellants Br. at pp. 29-30) Accordingly, the CSMI Parties argued that the Kinney Article must be viewed in the context of its wild assertion that Pennsylvania charter schools are being illegally or improperly managed as well and its imploring the reader to use the hyperlink to the Charter Page to read more "remarkable reporting" of "greedy grown-ups pilfering public gold" where the

Articles are prominently set apart as the marquee and inaccurately imply that they are representative of the other reporting appearing in the Charter Page. (Appellants Br. at p. 30)  The Kinney Article contains its own offensive content and exacerbates and escalates the misleading information contained in the Articles as well as endorsing the accuracy of the piece.  In publishing the Kinney Article in this manner, the Debtors have harmed the good name and reputations of the CSMI Parties, have falsely imputed a want of integrity in the conduct of the CSMI Parties' business (a business which itself involves the public trust in the use of taxpayer expenditures and the education of children) and have exposed the CSMI Parties to ridicule by others in the community, separate and apart from the December 2008 Articles. Id.

Second, Appellant characterizes CSMI Parties' position as arguing "that the Kinney Article nevertheless results in a post-petition tort claim simply because it includes a link to the Web Site which contains the two pre-petition Articles" and that this argument "has been rejected by every court to consider the issue." (Appellee Br. at p. 21) This is a gross distortion of both the stated position of the CSMI Parties as well as the application of the facts of this case to the analysis of those cases applying the Single Publication Rule to internet publications cited by the District Court.

The District Court based its conclusion that the Kinney Article did not constitute a republication on the erroneous finding that it "merely posted a link to the charter school webpage that contained the original articles." (District Court Order, Appx. Vol. I, p. A7; DDE #7 at p. 4) The CSMI Parties do not contend that the Debtors' post-petition actions give rise to an allowable administrative expense due to some sort of passive and neutral website link to the Articles. To the contrary, after the Petition Date the Debtors published and posted the Kinney Article to the internet for the express purpose of imploring readers to visit the Debtors' Charter Page and made independent insinuations of wrongdoing against the Appellants.

In their Opening Brief, the CSMI Parties present a detailed analysis of each of the cases relied upon by the Bankruptcy Court and the District Court in reaching the mistaken conclusion that the Kinney Article was not a republication and was therefore subject to the Single Publication Rule. (Appellants p. at p. 21-22) Far from having "been rejected by every court to consider the issue" as Appellee would suggest, the application of the unique and distinguishing facts of the instant Appeal, when applied to the rationale of these cases, compels the conclusion that the Kinney Article is excepted from the Single Publication Rule. [5] Contrary to the

---

[5] The CSMI Parties' analysis of <u>Sundance Image Technology, Inc. v. Cone Editions Press, Ltd.</u>, No. 02-cv-2258, 2007 WL 935703, at *6 (S.D. Cal., March 7, 2007); <u>Churchill v. State of New Jersey</u>, 876 A.2d 311, 319 (N.J. Super. 2005); of

assertions of the Debtors, the CSMI Parties presented the District Court with a legal basis to find that the Kinney Article was a republication of the Charter Page and Articles and the District Court erred in affirming the ruling of the Bankruptcy Court applying the Single Publication Rule.

Third, Appellee seems to suggest that the Bankruptcy Court retains the discretion to disallow an administrative expense claim that nevertheless fulfills the statutory parameters of 11 U.S.C. § 503(b)(1)(A) that the expense be "actual and necessary to preserve the estate" and arose from a post-petition transaction with the Debtors. (Appellee Br. at p. 18) However, the cases relied upon by Appellee for this suggestion are factually distinguishable and are not supportive of Appellee's assertion that the bankruptcy court retains discretion to disallow administrative claims that satisfy the statutory requirements of 11 U.S.C. § 503.

Appellee cites In re Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir. 1988) for the proposition that a bankruptcy court may properly disallow an administrative expense claim that nevertheless produced an actual benefit to the estate and which was necessary to preserve the value of the assets of the estate. However, the administrative claim in Dant was based on environmental cleanup costs on land leased by the debtor that the Ninth Circuit found to be ineligible for administrative

---

Mitan v. Davis, 243 F.Supp. 2d 719, 724 (W.D. Ky. 2003); Davis v. Mitan (In re Davis), 347 B.R. 607 (W.D. Ky. 2006); and Salyer v. Southern Poverty Law Ctr., Inc., 701 F. Supp. 2d 912, 916-17 (W.D. Ky. 2009) are presented in pages 22-27 of Appellants' Opening Brief.

claim status because the costs arose from the debtor's prepetition activities. Id. At

708-9.  Appellee cites Aspen Limousine Serv., Inc., 193 B.R. 325, 338-39 (D. Col

1996) for the proposition that a court does not abuse its discretion in refusing to

consider an administrative claim that was filed shortly before the confirmation

hearing.  However, the administrative claim in Aspen Limousine was made the

morning of the confirmation hearing by the primary competitor of the debtor who

asserted $3,260,000 of antitrust and business tort counterclaims that were not

accompanied by any factual or legal support. Id. at 335-36.  The court in Aspen

Limousine concluded that an administrative claim filed "without cause just minutes

before a confirmation hearing is set to commence is untimely, particularly where. .

. the lawsuit upon which the claim is based had been filed 'months prior.'" Id. at

338-39.  This is in stark contrast to what occurred here, where the CSMI Parties

timely filed their Administrative Expense Request by the August 2, 2010

Administrative Expense Bar Date and provided factual and legal support for the

requests in the form of a memorandum attached to each claim as well as

Administrative Expense Request Memorandum prior to the August 30 Hearing.

Thus, Dant and Aspen Limousine do not support Appellee's suggestion that the

Bankruptcy Court here retained discretion to deny the Administrative Expense

Request notwithstanding any satisfaction of the statutory elements for allowance

under 11 U.S.C. § 503.

**C.    The District Court Erred in Concluding that the Bankruptcy Court did not make Improper Conclusions at the August 26 Hearing on the Debtors' Motion for Expedited Hearing and by Scheduling the August 30 Hearing on the Merits on an Expedited Basis.**

The District Court erred when it concluded that the Bankruptcy Court did not prejudge the Claim Objection. (District Court Order, Appx. Vol. I, pp. A5-6; DDE #7 at pp. 2-3) The Bankruptcy Court made improper premature conclusions at the August 26, 2010, hearing on the Debtors' Motion for Expedited Hearing on the underlying merit of the Appellants' Administrative Expense Request before a complete record could be presented to the Bankruptcy Court and before the Appellants had the opportunity to file a response in opposition to the Debtors' Claim Objection. Further, Appellants' due process interests were infringed by being compelled to participate in an expedited hearing on the Debtors' Claim Objections to the Administrative Expense Requests with insufficient notice and opportunity to be heard.

Appellee contends as a threshold matter that the CSMI Parties never made an argument to the Bankruptcy Court that hearing the Claim Objection on an expedited basis would violate their due process rights and that the CSMI Parties consented to the scheduling of the August 30 Hearing and that, as a result, the due process argument should be rejected. (Appellee Br. at pp. 23-24) Appellee's claims are simply incorrect.  The day after the filing of the Debtors' Claim Objection and

Motion to Expedite, the CSMI Parties filed their Preliminary Objection to the

Motion to Expedite, stating that hearing the Claim Objection on shortened notice

deprives them of "a fair or adequate time to respond" and would "den[y] the CSMI

Parties' due process in the prosecution of the Administrative Claims." (Preliminary

Objection to Motion to Expedite, Appx. Vol. II, pp. A342-45; BDE #2468 at pp. 1-

4, par. 5, 9)  Further, any suggestion that the CSMI Parties consented to the

scheduling of the August 30 Hearing is similarly unfounded.  This date was imposed

by the Bankruptcy Court as a "take-it-or-leave-it" proposition. (Transcript of August

26 Hearing, Appx. Vol. II, p. A388:10-23; BDE #2532 at p. 25)

At the August 26 Hearing, the Bankruptcy Court remarked that it "had

reviewed all of the papers" and concluded that it could "detect virtually no merit to

th[e] assertion of an administrative expense claim"  (Transcript of August 26

Hearing, Appx. Vol. II, p. A379:3-13; BDE #2532 at p. 16)  However, these

declarations were made before the CSMI Parties had the opportunity to respond to

the Debtors' Claim Objection.  On August 30, 2010, several hours prior to the

August 30 hearing scheduled for 1:30 p.m., the CSMI Parties filed their

Administrative Expense Request Memorandum which presented a detailed analysis

of the content of the Kinney Article and its context to the Charter Page and

Articles. (Appx. Vol. II, pp. A348-363; BDE #2502 at pp. 1-12)  It is not clear

whether the Bankruptcy Court even considered the Administrative Expense

Memorandum as it issued its decision from the bench at the conclusion of the

August 30 Hearing. (August 30 Order, Appx. Vol. II, p. A391; BDE #2504 at p. 1)

The District Court failed to appreciate that the supposed "exigent situation"

that the Debtors used as a basis for their Motion to Expedite was of their own

making. (Appellants Br. at p. 36) The Debtors were aware of the certainty that

parties, in general, would file administrative claims and were on notice of the

CSMI Parties' intent to assert an administrative expense claim for post-petition

defamation.  Despite this awareness, the Debtors waited until June 11, 2010 to file

the Administrative Expense Bar Date Motion, resulting in the setting of the

administrative claims bar date for August 2, 2010. (Administrative Expense Bar

Date Motion, Appx. Vol. II, pp. A83-94; BDE #2175 at p. 1-12) The administrative

claims bar date requested was less than 30 days before the Debtors claimed they

needed resolution of these administrative claims in order to effectuate closing

under the Asset Purchase Agreement and the Debtors' Claims Objection was filed

on August 23, 2010, just one week prior to the scheduled closing of the asset sale.

(Claim Objection, Appx. Vol. II, pp. A136-60; BDE #2466 at pp. 1-25)

"The fundamental requirement of due process is the opportunity to be heard

'at a meaningful time and a meaningful manner.'" Anthony v. Interform Corp., 96

F.3d 692, 697 (3d Cir. 1996) (quotations omitted). Reasonable notice depends on

the situation. Brooks v. United States, 127 F.3d 1192, 1195 (9th Cir. 1997). Due

process requites "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314 (1950). The scheduling of the August 30 Hearing, just seven days after the filing of the Debtors' Claim Objection, prevented the CSMI Parties from adequately preparing defenses to the Debtors' Claim Objection as well precluding them, on a practical basis, from engaging in discovery in further support of the Administrative Expense Requests.

Whether notice is reasonably calculated and comports with due process depends on the particular circumstances of the case. The cases cited by Appellee in support of its contention that the expedited scheduling of the August 30 Hearing did not violate the due process interests of the CSMI Parties differ in procedural context from the issues presented in this Appeal and are factually distinguishable. (Appellee Br. at pp. 24-25) Appellee cites In re George, 4 F. App'x 357, 361 (9th Cir. 2001) for the proposition that due process is not violated where notice of the hearing was received four hours before the hearing and the party was able to appear. (Appellee Br. at p. 24) However, the debtor in George filed a bankruptcy petition three days before trial was scheduled to begin in his Tax Court case which justified the granting of an expedited hearing on the motion to lift the automatic stay so that the trial could proceed. Id. at 360. Appellee cites In re Lehman

4617543

19

Brothers Holdings, Inc., 415 B.R. 77, 85 (S.D.N.Y. 2009) for the proposition that

an expedited hearing scheduled two days after service of notice did not violate due

process. (Appellee Br. at pp. 24-25)  In approving an expedited schedule for a sale

hearing, the court in Lehman considered testimony that the debtor was a wasting

asset and would likely disappear as a going concern if the sale were not approved

by the requested date. Id. at 80. Unlike the situation here where the CSMI Parties'

Appeal does not threaten to unwind the Debtors' Plan, the appeal of the sale order

in Lehman was denied as equitably moot as the appellants there were seeking to

unwind the sale and had failed to obtain a stay. Id. at 83, 85. Similarly, Apellee's

reliance on In re Johns-Manville Corp., 600 F.3d 135, 147-148 (2d Cir. 2010) is

unpersuasive. The court there found that a group of asbestos personal injury

plaintiffs did not preserve an argument that due process prevented enforcement

against them of the direct action settlement when the objecting plaintiffs were

represented at the fairness hearings held by the court on the notice procedures

related to the settlement-approval process and where it did not appear that the

plaintiffs made any objection to the court at that time. Id at 148. Moreover,

Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 552 (D.D.C. 2008), is

inapposite because the court there found no due process violation where the notice

was sufficient to permit a meaningful objection to the settlement and the creditor

suffered no prejudice as a result. Here, however, the CSMI Parties were prejudiced

by the expedited scheduling of the Claim Objection, a fact that was recognized by the Bankruptcy Court.  (Transcript of August 26 Hearing, Appx. Vol. II, p. A37879: 17-2, BDE #2532 at pp. 15-16) Finally, In re Horizon Natural Res. Co., 162 F.App'x 393, 394 (6th Cir. 2005) provides no analysis or discussion for the for blank proposition that due process rights are not violated when an expedited hearing is held without allowing time for discovery and, thus, lacks persuasive guidance for the issues here.

The decision of bankruptcy court to reduce the notice period under Fed. R. Bankr. P.  9006 is reviewed for an abuse of discretion.  In re Centric Corp., 901 F.2d 1514, 1517 (10th Cir. 1990), *cert. den.* 498 U.S. 852 (1990). Because the Bankruptcy Court had prejudged the merits of the Administrative Expense Request, it did not properly weigh the prejudice that would be imposed upon the CSMI Parties of having to defend against the Claim Objection on shortened notice at an expedited hearing. Moreover, the Bankruptcy Court did not consider the Debtors' delay in filing the Claim Objections, their own responsibility in creating a need for an immediate hearing or the possibility that these procedural exigencies were intentional.  An "abuse of discretion" will be found when the judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria or procedures are used.  In re American Classic Voyages, Co., 298 B.R. 222 (D. Del. 2003).  The appellate court reviews whether the bankruptcy court violated a party's

right to procedural due process *de novo*.  <u>Lagenkamp v. Hackler (In re Republic Trust & Sav. Co.)</u>, 897 F.2d 1041, 1043 (10th Cir. 1990), *rev'd on other grounds*, 498 U.S. 42 (1990).

Because the Bankruptcy Court prejudged the merits of the Administrative Expense Request at the August 26 Hearing and because the Bankruptcy Court never considered the Debtors' own culpability in the delay of filing of the Claim Objections and the supposed need for shortened notice, the Bankruptcy Court failed to make a reasoned determination of the need for and harm resulting from expedited consideration of the Claim Objection. Accordingly, the decision of the District Court that the Bankruptcy Court did not err in granting the Motion to Expedite should be reversed on appeal.

## II.    <u>CONCLUSION</u>

Consistent with the preceding arguments, the CSMI Parties respectfully request that the District Court's Order be reversed.


Respectfully Submitted,

Dated: February 21, 2012    By: /s/ Edmond M. George
                    Edmond M. George, Esquire
                    D. Alexander Barnes, Esquire
                    OBERMAYER REBMANN MAXWELL &
                    HIPPEL LLP
                    One Penn Center, 19th Floor
                    1617 John F. Kennedy Blvd.
                    Philadelphia, PA 19103-1895
                    Telephone: (215) 665-3100
                    Facsimile: (215) 665-3165

                    *Counsel for Appellants Vahan Gureghian,*
                    *Danielle Gureghian and Charter School*
                    *Management, Inc.*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am admitted to practice before both the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit.

Dated: February 21, 2012    By: <u>/s/ Edmond M. George</u>
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
Telephone: (215) 665-3100
Facsimile: (215) 665-3165

*Counsel for Appellants Vahan Gureghian,
Danielle Gureghian and Charter School
Management, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

*Certificate of Compliance With Type-Volume Limitation,*
*Typeface Requirements, and Type Style Requirements*

This brief complies with the type-volume limitation of Fed. R. App. P 28.1(e)(2)(B)(i) because this brief contains 5,486 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typefaced requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2003 in Times New Roman, Font 14.

Dated: February 21, 2012    By: /s/ Edmond M. George
                                     Edmond M. George, Esquire
                                     OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                     One Penn Center, 19th Floor
                                     1617 John F. Kennedy Blvd.
                                     Philadelphia, PA 19103-1895
                                     Telephone: (215) 665-3100
                                     Facsimile: (215) 665-3165

                                     *Counsel for Appellants Vahan Gureghian,*
                                     *Danielle Gureghian and Charter School*
                                     *Management, Inc.*

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

Edmond M. George, Attorney for Appellants, hereby certifies that the text of the electronically filed Brief and hard copies of Appellants' Reply Brief served upon the Court are identical.

Dated: February 21, 2012    By: <u>/s/ Edmond M. George</u>

Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
Telephone: (215) 665-3100
Facsimile: (215) 665-3165

*Counsel for Appellants Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc.*

## <u>CERTIFICATE OF VIRUS CHECK</u>

Edmond M. George, Attorney for Appellants, hereby certifies that he has performed a virus check of the electronically filed Brief, using Symantec Endpoint Protection 11.0.5002.333.

Dated: February 21, 2012    By: <u>/s/ Edmond M. George</u>

Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
Telephone: (215) 665-3100
Facsimile: (215) 665-3165

*Counsel for Appellants Vahan Gureghian, Danielle Gureghian and Charter School Management, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 21st day of February 2012, electronically filed the herein Reply Brief of Appellants with the Court, as well as sent ten (10) copies via Hand Delivery of the Reply Brief of Appellants. Counsel has also been served electronically by the Notice of Docket Activity and via overnight delivery as follows:

Andrew C. Kassner, Esquire
Andrew J. Flame, Esquire
David F. Abernethy, Esquire
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

Abid Qureshi, Esquire
Sunish Gulati, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

Dated: February 21, 2012   By: /s/ Edmond M. George
                                Edmond M. George, Esquire
                                OBERMAYER REBMANN MAXWELL &
                                HIPPEL LLP
                                One Penn Center, 19th Floor
                                1617 John F. Kennedy Blvd.
                                Philadelphia, PA 19103-1895
                                Telephone: (215) 665-3100
                                Facsimile: (215) 665-3165

                                *Counsel for Appellants Vahan Gureghian,
                                Danielle Gureghian and Charter School
                                Management, Inc.*